2002 ND 141

**COMSTOCK CONSTRUCTION, INC.,
Plaintiff, Appellee and Cross–
Appellant,**

**v.**

**SHEYENNE DISPOSAL, INC.,
Defendant, Appellant and
Cross–Appellee.**

No. 20010281.

Supreme Court of North Dakota.

Aug. 29, 2002.

Richard J. Henderson (argued), Nilles, Hansen & Davies, Ltd., Moorhead, MN and Jacqueline Sue Anderson (on brief), Nilles, Hansen & Davies, Ltd., Fargo, for defendant, appellant and cross-appellee.

Robert Garold Hoy, Ohnstad Twichell, P.C., West Fargo, for plaintiff, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Sheyenne Disposal, Inc., appeals from a judgment and order denying its post-trial motion for a new trial and for remittitur of interest. Comstock Construction, Inc., cross-appeals from the dismissal of its claim for a mechanic's lien. We conclude the trial court did not abuse its discretion in denying Sheyenne Disposal's post-trial motion, but the court erred in dismissing Comstock Construction's claim for a mechanic's lien. We affirm in part, reverse in part, and remand.

I

[¶ 2] In 1998, John Beardmore, a representative of Sheyenne Disposal, contacted Bob Comstock, a principal of Comstock Construction, regarding the construction of a solid waste transfer station in West Fargo. There was no written contract between the parties, and the main dispute in this case involves the price Comstock Construction would charge Sheyenne Disposal for construction of the transfer station if Bob Comstock did not receive an ownership interest in it. Bob Comstock did not receive an interest in the transfer station, and according to him, the parties agreed that, under those circumstances, Comstock Construction would charge Sheyenne Disposal cost plus "normal markup" for the work. According to Beardmore, the parties did not agree on a price for the work if Bob Comstock did not receive an interest in the transfer station, and in that case, he and Bob Comstock agreed to meet at a later date to negotiate the final price.

[¶ 3] In late 1998, Comstock Construction began work on the transfer station. According to Bob Comstock, Comstock Construction "substantially complete[d]" the station in May 1999, and the facility began operation then. In September 1999, Comstock Construction recorded a

$487,847.41 mechanic's lien on the property on which the transfer station was built. On March 16, 2000, Sheyenne Disposal mailed Comstock Construction a written demand by certified mail with return receipt requested, stating "suit must be commenced and filed with the Clerk of Court for Cass County within thirty (30) days after this notice is served on Comstock Construction or the lien will be forfeited." Comstock Construction signed for receipt of the written demand on March 18, 2000. On April 17, 2000, Comstock Construction personally served a summons and complaint on the registered agent for Sheyenne Disposal. On April 18, 2000, Comstock Construction filed this action for a money judgment and for foreclosure of its mechanic's lien. The trial court granted Sheyenne Disposal partial summary judgment, concluding Comstock Construction had forfeited its mechanic's lien under N.D.C.C. § 35–27–25, because it had not commenced and filed its action within thirty days after service of the written demand.

[¶ 4] At trial, the parties disputed the amount due Comstock Construction for construction of the transfer station. Comstock Construction claimed the parties had an express or implied contract for costs plus normal markup. Sheyenne Disposal conceded Comstock Construction was entitled to reasonable expenses for its work under the doctrine of quasi contract, but claimed there was no express or implied agreement regarding the amount due. A jury returned a special verdict, finding there was an express or implied contract for construction of the transfer station, and the total amount Sheyenne Disposal owed Comstock Construction was $781,745.72. The jury also awarded Comstock Construction 6% interest on the award from May 1, 1999. The trial court credited Sheyenne Disposal for previous payments to Comstock Construction, and a

judgment was entered awarding Comstock Construction $556,697.74, plus costs and disbursements. The trial court denied Sheyenne Disposal's post-trial motion for a new trial under N.D.R.Civ.P. 59(b)(6) and for remittitur of the interest under N.D.R.Civ.P. 59(b)(5).

## II

[¶ 5] Sheyenne Disposal argues the jury's finding there was an express or implied agreement between the parties is not supported by the evidence. Sheyenne Disposal claims the parties' agreed they would meet at a later date to work out the final charges for the work. Sheyenne Disposal argues the trial court abused its discretion in denying the motion for a new trial.

[¶ 6] We review a trial court's denial of a motion for a new trial under the abuse of discretion standard. *Brandt v. Milbrath*, 647 N.W.2d 674, 2002 ND 117, ¶ 24; *Rodenburg v. Fargo–Moorhead Young Men's Christian Ass'n*, 2001 ND 139, ¶ 7, 632 N.W.2d 407. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Sollin v. Wangler*, 2001 ND 96, ¶ 8, 627 N.W.2d 159. In reviewing a trial court's decision on a motion for a new trial based on insufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine if there is sufficient evidence to support the verdict. *Kreidt v. Burlington Northern R.R.*, 2000 ND 150, ¶ 19, 615 N.W.2d 153.

[¶ 7] In considering a motion for a new trial based on insufficiency of the evidence, we have said:

the trial court may, within limits, weigh the evidence and judge the credibility of witnesses. In particular, when a motion for a new trial is made and the reason given in support of the motion is that there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide whether or not the verdict is against the weight of the evidence. And in making this decision, the trial judge must weigh the evidence; he must consider that evidence which supports the verdict equally with that evidence which challenges the verdict. In short, when ruling on a motion for a new trial, the trial judge may consider *all* the evidence.

*Okken v. Okken*, 325 N.W.2d 264, 269 (N.D.1982) (citations omitted).

■ [¶ 8] Sheyenne Disposal argues the trial court, in denying the motion for a new trial, referred only to Bob Comstock's testimony that the contract price was cost plus "normal markup" and to testimony about the meaning of "normal markup" by the comptroller for Comstock Construction, Susan Bowman. Sheyenne Disposal argues the court did not weigh that evidence with evidence that was contrary to the verdict, and the court's failure to do so was an abuse of discretion.

[¶ 9] The trial court cited *Okken* and said "[w]hen ruling on a motion for a new trial, a court must consider all the evidence which includes both evidence that supports the verdict and evidence that challenges the verdict." Although the trial court did not explicitly cite testimony contrary to the verdict, the court referred to the standard enunciated in *Okken* and stated "[t]he jury's role is to determine the weight and credibility to give to witnesses [and t]he jury performed that role with the testimony of Bob Comstock and the Controller." The court thereafter concluded there was sufficient evidence to sustain the verdict.

Although the court's decision could have been more explicit, we conclude the court's statements reflect it weighed the conflicting testimony under *Okken.*

■ [¶ 10] Sheyenne Disposal argues the jury's verdict is not supported by the evidence and is against the weight of the evidence. Sheyenne Disposal argues there was only an agreement to agree at a future date on an acceptable price for the work.

[¶ 11] The trial court instructed the jury:

A contract is an agreement to do or not do a certain thing.

A contract may be express, implied-in-fact, or implied-in-law.

An express contract is one in which the terms are stated orally or in writing. An implied-in-fact contract is one in which its existence and terms are manifested by conduct.

The distinction between an express and an implied-in-fact contract relates only to the manner in which the agreement is shown. Both are based on the express or apparent intention of the parties.

An implied-in-law or quasi-contract is an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended. The essence of an implied-in-law contract is the receipt of a benefit which would be inequitable to retain without paying for it.

A breach of contract is a failure to perform all or any part of what is warranted or required in a contract.

■ [¶ 12] Sheyenne Disposal has not raised any issues about the jury instructions, and those unopposed instructions are the law of the case. *Anderson v. Jacobson*, 2001 ND 40, ¶ 11, 622 N.W.2d 730. It is undisputed Bob Comstock did not re-

ceive an interest in the transfer station. According to Bob Comstock, if he did not receive an interest in the station, the parties agreed Comstock Construction would charge Sheyenne Disposal cost plus "normal markup" for the work. According to Beardmore, the parties did not agree on a price for the construction work, and he and Bob Comstock agreed to meet at a later date to negotiate the final charges. Susan Bowman, the comptroller for Comstock Construction, testified that Comstock Construction's cost plus "normal markup" for construction of the transfer station was $781,745.72. Bowman testified, for cost based jobs, the standard overhead markup was 10 percent of costs, the standard profit was 5 percent of costs, and the standard rate per hour for labor was $31. Bowman testified that, based on those percentages and rates, the total bill for construction of the transfer station was $781,745.72, which was the total amount the jury found due under an express or implied contract between Comstock Construction and Sheyenne Disposal.

■ [¶ 13] The terms of an oral contract can be established through extrinsic evidence, and a determination of those terms is for the trier of fact. *See Fronteer Directory Co., Inc. v. Maley*, 1997 ND 162, ¶ 13, 567 N.W.2d 826; *Delzer v. United Bank*, 459 N.W.2d 752, 757 (N.D.1990). Here, the testimony of Bob Comstock and Bowman supports the jury's verdict that the parties had an express or implied agreement that Comstock Construction's charge for constructing the transfer plant was cost plus "normal markup." Bowman testified what "normal markup" meant. Viewing the evidence in the light most favorable to the verdict, we conclude there is evidence that supports the jury's finding there was an express or implied agreement between the parties. We conclude the jury's finding of an express or implied

agreement and the total amount due under the contract is supported by the evidence. We therefore conclude the trial court did not abuse its discretion in denying Sheyenne Disposal's motion for a new trial.

### III

■ [¶ 14] Sheyenne Disposal argues the trial court erred in denying remittitur on the jury's award of interest. Sheyenne Disposal argues the damages awarded by the jury were not certain or capable of being made certain on any particular day under N.D.C.C. § 32–03–04, and Comstock Construction failed to show its right to payment vested on May 1, 1999.

[¶ 15] The jury awarded Comstock Construction interest from May 1, 1999, which, according to Bob Comstock, was when the work on the transfer station was "substantially complete[d]." The trial court instructed the jury that if it returned a verdict awarding damages, it "may award interest at a rate no greater than six percent per annum from the date of the wrongful act."

[¶ 16] Although Sheyenne Disposal claims the damages awarded by the jury were not certain or capable of being made certain on any particular day under N.D.C.C. § 32–03–04, Sheyenne Disposal has raised no issues regarding the jury instructions about interest and those instructions are the law of the case. *See Anderson*, 2001 ND 40, ¶ 11, 622 N.W.2d 730. We have said because a claim is disputed does not render the claim uncertain or unliquidated so as to preclude interest under N.D.C.C. § 32–03–04. *See Western Nat'l Mut. Ins. Co. v. UND*, 2002 ND 63, ¶¶ 44–47, 643 N.W.2d 4. There was evidence Comstock Construction's work on the transfer station was substantially completed on May 1, 1999, the date from which the jury awarded interest. We conclude the trial court did not abuse its discretion

in denying Sheyenne Disposal's request for remittitur on the interest award.

### IV

[¶ 17] In its cross-appeal, Comstock Construction argues the trial court erred in granting partial summary judgment dismissing its claim for a mechanic's lien.

[¶ 18] In September 1999, Comstock Construction recorded a $487,847.41 mechanic's lien on the property on which the transfer station was built. On March 16, 2000, Sheyenne Disposal mailed Comstock Construction a written demand by certified mail with return receipt requested, stating Comstock Construction was required to commence and file an action within 30 days to foreclose its mechanic's lien. On March 18, 2000, a representative for Comstock Construction signed for receipt of the written demand. On April 17, 2000, Comstock Construction served Sheyenne Disposal with an action for damages and to foreclose the mechanic's lien. On April 18, 2000, Comstock Construction filed the action with the clerk of the district court.

[¶ 19] The trial court granted Sheyenne Disposal's motion for partial summary judgment, ruling Comstock Construction had forfeited its mechanic's lien because the action was not commenced and filed within thirty days after the written demand was served and therefore was not timely under N.D.C.C. § 35–27–25. The court's decision indicates it calculated the time for commencing and filing the action from March 16, 2000, the day Sheyenne Disposal mailed the written demand to Comstock Construction, and concluded the action was commenced and filed thirty-three days after Sheyenne Disposal mailed the written demand.

[¶ 20] Comstock Construction argues the trial court erred in refusing to follow N.D.R.Civ.P. 6 to compute time under N.D.C.C. § 35–27–25. Comstock Construction argues its claim for foreclosure of the mechanic's lien was timely because three days must be added when service is completed by mail under N.D.R.Civ.P. 6(e), which provides "[w]henever a party has the right or is required to do an act within a prescribed period after service of a notice or other paper and the notice or paper is served by mail or third-party commercial carrier, 3 days must be added to the prescribed period." Comstock Construction argues its action to foreclose the mechanic's lien was timely because Sheyenne Disposal's service of the written demand was by mail and the action was commenced and filed within thirty days plus three days for mailing.

[¶ 21] Our analysis of this issue requires interpretation of N.D.C.C. § 35–27–25, which provides:

Upon written demand of the owner, that person's agent, or contractor, served on the person holding the lien, suit must be commenced and filed with the clerk of court within thirty days thereafter or the lien is forfeited. The demand must contain a provision informing the person holding the lien that if suit is not commenced within thirty days, the person holding the lien forfeits the lien. No lien is valid or effective as such, nor may be enforced in any case, unless the holder thereof asserts the same by complaint filed with the clerk of court within three years after the date of recording of the verified notice of intention to claim a mechanic's lien. If a summons and complaint asserting the validity of the lien is not filed in the office of the clerk of court of the county in which the lien is recorded within the limitations provided by this section, the lien is deemed satisfied and the clerk of court shall, upon request of any interested person, certify to the recorder that no summons and complaint has been

filed and the lien is deemed satisfied under this section, who then shall record the verified certificate.

[¶ 22] The interpretation of a statute is a question of law and is fully reviewable on appeal. *Berg v. Berg,* 2000 ND 36, ¶ 24, 606 N.W.2d 895. Our primary objective in construing a statute is to ascertain legislative intent by looking at the language of the statute itself. *State ex rel. Heitkamp v. Family Life Services, Inc.,* 2000 ND 166, ¶ 7, 616 N.W.2d 826. We harmonize statutes to give meaning to related provisions, and we construe statutory language according to its plain, ordinary, and commonly understood meaning. *Id.* N.D.C.C. § 1–02–02. Although we may resort to extrinsic aids to interpret a statute if it is ambiguous, we look first to the statutory language, and if the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. *Overboe v. Farm Credit Services,* 2001 ND 58, ¶ 9, 623 N.W.2d 372. We give consideration to the context of statutes and the purposes for which they were enacted. *Falcon v. State,* 1997 ND 200, ¶ 9, 570 N.W.2d 719.

[¶ 23] Under N.D.C.C. § 35–27–25, unless an action on a mechanic's lien is commenced and filed within thirty days after a written demand is "served" on the person holding the lien, the lien is forfeited. Under N.D.C.C. § 35–27–25, the thirty-day time period for commencing and filing an action begins when the written demand is "served" on the person holding the lien. However, N.D.C.C. § 35–27–25 does not define when a written demand is served and does not provide any further guidance for computing the thirty days. A related statute for computing time, N.D.C.C. § 1–02–15, provides, in part, that "[t]he time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last

is a holiday, and then it also is excluded." *See also* N.D.C.C. § 1–03–01 (defining holidays) and N.D.C.C. § 1–03–05 (stating act due on holiday may be performed on next business day).

[¶ 24] In construing the ordinary meaning of language in statutes, we have often resorted to dictionary definitions. *See Estate of Zimmerman,* 2001 ND 155, ¶ 15, 633 N.W.2d 594; *McDowell v. Gillie,* 2001 ND 91, ¶ 12, 626 N.W.2d 666. One dictionary defines "serve" as "a) to deliver (a legal instrument, as a summons) b) to deliver a legal instrument to; esp., to present with a writ." *Webster's New World Dictionary* 1301 (2d Coll. Ed.1980). Another dictionary defines "serve" as to "bring to notice, deliver, or execute actually or constructively as required by law: to put into effect (to serve a summons or process is to deliver it, or to read it so as to give notice, or both)." *Webster's Third New International Dictionary* 2075 (1971). A legal dictionary defines "serve" as "[t]o make legal delivery of (a notice or process) . . . [t]o present (a person) with a notice or process as required by law." *Black's Law Dictionary* 1372 (7th ed.1999). Those authorities indicate the plain and ordinary meaning of serve contemplates that a written demand is served within the meaning of N.D.C.C. § 35–27–25 when the demand is delivered and notice is given to the person holding the lien. That plain and ordinary meaning of "serve" is similar to the provisions for personal service of process within the state under N.D.R.Civ.P. 4(d)(2), which, as relevant to this case, authorizes personal service upon a corporation by any form of mail or third-party commercial delivery addressed to an appropriate representative of the corporation and requiring a signed receipt and resulting in delivery to that representative.

[¶ 25] A written demand by an owner under N.D.C.C. § 35–27–25 will

ordinarily shorten the statute of limitations for commencing and filing an action to enforce a mechanic's lien. When a landowner serves a written demand on the person holding the lien, the demand is the document that initiates legal proceedings in the sense that it requires an action to be commenced and filed within thirty days after service of the demand. In that situation, because service of the written demand effectively results in the commencement and filing of an action to enforce the mechanic's lien, we conclude the provisions for service of process in N.D.R.Civ.P. 4 apply to measure when the written demand is served. Under N.D.R.Civ.P. 4(d)(2), the written demand was served on Comstock Construction on March 18, 2000, when the demand was delivered by registered mail to Comstock Construction's representative and that representative signed for receipt of the demand. However, the resolution of that issue only partially resolves whether Comstock Construction's action was timely.

[¶ 26] Section 35–27–25, N.D.C.C., can be traced back to 1887 Compiled Laws of the Territory of Dakota § 5482, which was designated as part of the Code of Civil Procedure and provided "[u]pon written demand of the owner, his agent or contractor, served on the person holding the lien, requiring him to commence suit to enforce such lien, such suit shall be commenced in thirty days thereafter, or the lien shall be forfeited." The 1887 provision for commencing a suit to enforce a mechanic's lien was part of the Code of Civil Procedure, which also authorized notices to be personally served on the party or attorney and permitted personal service and service by mail. *See* 1877 Compiled Laws of the Territory of Dakota, §§ 5327–5330. Under those provisions, when service was by mail, "it shall be double the time required in cases of personal service." 1877 Com-

piled Laws of the Territory of Dakota § 5331.

[¶ 27] Those related provisions contemplated that when a person chose to serve a notice by mail, the responding person was given "double the time required in cases of personal service" to respond. Rule 6, N.D.R.Civ.P., which was adopted in 1957, lists several statutes as superseded, including 1943 N.D. Rev.Code § 28–2816, which authorized "double the time required in cases of personal service" after service by mail. In 1961, when the Legislature reenacted the mechanic's lien law, *see* 1961 N.D. Sess. Laws ch. 238, the rules of civil procedure, including N.D.R.Civ.P. 6(e), had been in effect for several years and allowed three additional days to do an act after service by mail.

[¶ 28] The Legislature is presumed to know the law when enacting legislation. *See State v. Clark*, 367 N.W.2d 168, 170 (N.D.1985). When the historical circumstances for additional time after service by mail are considered with the statutes superseded by N.D.R.Civ.P. 6 and the Legislature's reenactment of the mechanic's lien law after the adoption of the rules of civil procedure, we conclude the Legislature intended the provisions for additional time after service by mail under N.D.R.Civ.P. 6(e) to apply when an owner chooses to serve a written demand by registered mail under N.D.C.C. § 35–27–25. Although that interpretation may result in a modest increase in time for commencing and filing an action when a landowner chooses to serve a written demand by registered mail, it promotes certainty and uniformity for that situation. We conclude the trial court erred in refusing to apply N.D.R.Civ.P. 6 to compute Comstock Construction's time for commencing and filing an action after Sheyenne Disposal's service of the written demand by registered mail under N.D.C.C. § 35–27–27.

[¶ 29] Here, Sheyenne Disposal's written demand was served on Comstock Construction on March 18, 2000, when a representative for Comstock Construction signed for receipt of the demand. *See Eggl v. Fleetguard, Inc.*, 1998 ND 166, ¶ 18, 583 N.W.2d 812. Comstock Construction commenced the action on April 17, 2000, *see* N.D.R.Civ.P. 3, and filed the action with the clerk of court on April 18, 2000. Under N.D.C.C. §§ 1–02–15, 35–27–25 and the three additional days provided by N.D.R.Civ.P. 6(e), Comstock Construction's action was commenced and filed within thirty days, plus three days for mailing, after the written demand was served on it. Comstock Construction's action was timely, and it therefore did not forfeit its mechanic's lien.

### V

[¶ 30] We affirm the judgment and order denying Sheyenne Disposal's post-trial motion. We reverse the partial summary judgment dismissing Comstock Construction's claim for a mechanic's lien, and we remand for proceedings consistent with this opinion.

[¶ 31] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.