2004 ND 104

**Sandra DUMA, Plaintiff and Appellant**

v.

**Shawn KEENA, Todd Keena, and
Laurie Keena, Defendants
and Appellees.**

**No. 20030302.**

Supreme Court of North Dakota.

June 3, 2004.

Robert V. Bolinske, Bismarck, ND, for
plaintiff and appellant.

William C. Severin, Severin, Ringsak & Morrow, Bismarck, ND, for defendants and appellees.

MARING, Justice.

[¶ 1]  Sandra Duma appeals a judgment entered upon a jury verdict, ordering that Duma take nothing, dismissing the action on the merits, and granting the defendants costs and disbursements.  We affirm.

## I

[¶ 2]  Duma was a passenger in a car driven by John Adams.  She was injured when the car driven by Adams was in an accident with a car driven by Shawn Keena.  Duma sued Keena for negligence, alleging Keena failed to yield the right-of-way.  One of Keena's defenses was that Duma would have reduced or mitigated her damages had she been wearing a seatbelt.  Duma argued she was initially wearing a seatbelt, but it came unbuckled during the accident.

[¶ 3]  During deliberations, the jury submitted a question to the judge.  The jury wrote, "[p]lease clarify question 5[.] Does question 5 ask if Sandra Duma is at fault for the accident or at fault for her injuries[?]"  The trial judge responded that "[q]uestion 5 asks if Sandra Duma is at fault for the accident."  The jury filled out the special verdict form as follows:

QUESTION 1:

Does the greater weight of the evidence establish that Defendant Shawn Keena was at fault?

YES

If you answered Question 1 "NO", sign and return this verdict.  If you answered Question 1 "YES", then answer Question 2.

QUESTION 2:

Was the fault of Defendant Shawn Keena, a proximate cause of Sandra Duma's alleged injuries?

YES

If you answered Question 2 "NO", sign and return this verdict.  If you answered Question 2 "YES", then answer Question 3.

QUESTION 3:

Does the greater weight of the evidence establish that John Adams was at fault?

YES

If you answered Question 3 "NO," then go to Question 5. If you answered Question 3 "YES," then answer Question 4.

QUESTION 4:

Was the fault of John Adams a proximate cause of Sandra Duma's alleged injuries?

YES

QUESTION 5:

Was the Plaintiff Sandra Duma at fault?

NO

If you answered Question 5 "NO," then go on to Question 7. If you answered Question 5 "YES,", then answer Question 6.

QUESTION 6:

Was the fault of Sandra Duma a proximate cause of her alleged injuries?

NO

QUESTION 7:

Taking all of the fault that proximately cause the plaintiff's' damages as 100%, what percentage of fault do you attribute to:

| | |
|---|---|
| Shawn Keena | 60% |
| John Adams | 40% |
| Sandra Duma | 0% |
| Total | 100% |

QUESTION 8:

What amount of money will fairly compensate the plaintiff for:

| | |
|---|---|
| Past economic damages | $10,000 |
| Future economic damages | $ 0 |
| Past non-economic damages | $ 5,000 |
| Future non-economic damages | $ 0 |

QUESTION 9–A:

Was Sandra Duma wearing a seat belt?

NO

If you answered Question 9–A "NO," then answer Question 9.

QUESTION 9:

What, if any, percentage of her injuries would have Sandra Duma avoided if she had used a seat belt and shoulder harness?

100%

QUESTION 10:

Should the plaintiff be awarded interest on the damages?

NO

QUESTION 11:

If you answered Question 9 "YES," what rate of interest should be used (subject to a maximum of 6%)?

0%

[¶ 4] The trial court entered judgment ordering that Duma take nothing, dismissing the action on the merits, and granting the defendants costs and disbursements. Duma appeals the judgment.

## II

[¶ 5] Duma argues the jury's special verdict is inconsistent and cannot be reconciled. Duma argues it is inconsistent for the jury in Question 6 to find Duma was not the proximate cause of her injuries but in Question 9 find she could have avoided 100 percent of her injuries had she worn a seatbelt. Additionally, Duma argues it is impossible to determine if the jury's answer to Question 9–A found that she was not wearing a seatbelt or that she initially wore her seatbelt and it came unbuckled in the accident. We disagree.

### A

[¶ 6] We will uphold "special verdicts on appeal whenever possible and set aside a jury's special verdict only if it is perverse and clearly contrary to the evidence." *Moszer v. Witt*, 2001 ND 30, ¶ 11, 622 N.W.2d 223. The test for reconciling apparent conflicts in a jury's verdict is:

> [W]hether the answers may fairly be said to represent a *logical and probable decision* on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial.

*Id.* (quotation omitted) (emphasized in original). "We reconcile a verdict by examining both the law of the case and the evidence to determine whether the verdict is logical and probable or whether it is perverse and clearly contrary to the evidence." *Id.* at ¶ 11. "Reconciliation of a verdict, therefore, includes an examination of both the law of the case and the evidence in order to determine whether the verdict is logical and probable and thus consistent, or whether it is perverse and clearly contrary to the evidence." *Barta v. Hinds*, 1998 ND 104, ¶ 6, 578 N.W.2d 553 (quotation omitted). We note that our review of the evidence presented to the trial court is limited because no transcript was provided on appeal except a partial transcript of a proceeding outside the presence of the jury concerning the special verdict form. *See State v. Roth*, 2004 ND 23, ¶ 27, 674 N.W.2d 495 (stating that failure to provide this Court with a transcript on appeal may prevent the appellant from being successful).

[¶ 7] The parties received the jury instructions and special verdict form and had

an opportunity to object to them. In fact, Duma's counsel requested Question 9–A be added in order to clarify the verdict form. On appeal, Duma does not raise any issues regarding the jury instructions; therefore, those unopposed instructions become the law of the case. *Comstock Const., Inc. v. Sheyenne Disposal, Inc.,* 2002 ND 141, ¶ 12, 651 N.W.2d 656.

[¶ 8] The jury instruction in this case treats seatbelt use as a mitigating factor to reduce damages. The jury was instructed:

### USE OF SEATBELT

Evidence was presented from which you could find that the plaintiff was not using an available seatbelt and shoulder harness at the time of the accident. If you find (1) that it was unreasonable for the plaintiff not to use the seatbelt and shoulder harness and (2) that the plaintiff would not have received some or all of her injuries had she worn a seat belt and shoulder harness, then (3) the amount of damages awarded the plaintiff for the injuries she sustained, if any, must be reduced in proportion to the amount of injury she would have avoided by the use of a seatbelt and shoulder harness.

The burden of proof on both (1) and (2) rests with the defendant.

[¶ 9] In *Halvorson v. Voeller,* we examined helmet use while riding a motorcycle, a situation similar to wearing a seatbelt while riding in a car. 336 N.W.2d 118 (N.D.1983). We specifically held that helmet use is "relevant to the issue of damages" but "has no relevance to the issue of liability for causing the accident." *Id.* at 119. We stated that "if damages are capable of reasonable apportionment to separate causes, it should make no difference whether the plaintiff's negligence in aggravating his injuries preceded or succeeded the defendant's negligence." *Id.* at 120.

In *Halvorson,* we gave an example jury instruction, which we held a trial court is warranted in giving:

If you find (1) it was unreasonable for the plaintiff to not wear a helmet, and (2) the plaintiff would not have received some or all of his injuries had he worn a helmet, then (3) the amount of damages awarded the plaintiff for the injuries he sustained must be reduced in proportion to the amount of injury he would have avoided by the use of a helmet. The burden of proof on both (1) and (2) rests with the defendant.

*Id.* at 121 (footnote omitted).

[¶ 10] The unopposed jury instruction for the use of a seatbelt in the present case is essentially identical to our suggested jury instruction on use of a helmet in *Halvorson.* As in *Halvorson,* Duma's failure to wear a seatbelt, while not the cause of the accident, is relevant to her damages according to the "use of seatbelt" instruction. Therefore, the jury was instructed to treat the use of a seatbelt as a mitigating factor to reduce damages, and that instruction is the law of the case.

### B

[¶ 11] Duma points to language in *Halvorson* calling helmet nonuse "antecedent negligence" and argues that based on the special verdict form, the jury possibly addressed Duma's negligence for failing to wear a seatbelt in its answer to Question 6. Duma also argues the special verdict form could be read to find that the jury took Duma's failure to wear a seatbelt into consideration in Question 7 when it determined what percentage of fault to attribute to her. Further, Duma argues it is possible the jury meant to award her $15,000, regardless of its answers to the seatbelt questions.

[¶ 12] The jury should not have answered Question 6. It was instructed to skip Question 6 if it answered "no" to Question 5. Question 6 asked if the fault of Sandra Duma was a proximate cause of her *injuries,* rather than the proximate cause of the *accident.* The jury answered Question 6 "no." However, a special verdict question cannot be examined in a vacuum. We must look to the entire special verdict form and the jury instructions to determine whether an inconsistency exists. *Moszer,* 2001 ND 30, ¶ 11, 622 N.W.2d 223.

[¶ 13] In this case, Question 6 is clearly linked to Question 5. It is logical and probable, based on the jury instructions, that the jury concluded Questions 5 and 6 asked it to determine Duma's fault for causing the accident, not her fault for failing to mitigate her injuries by wearing a seatbelt. The jury's question to the trial judge during deliberations supports our conclusion that the jury found Questions 5 through 7 asked them strictly about the negligence and damages relating to the accident, not about the effect Duma's failure to wear a seatbelt had on her recovery for her injuries. The jury wrote, "[p]lease clarify question 5[.] Does question 5 ask if Sandra Duma is at fault for the accident or at fault for her injuries[?]" The trial judge responded that "[q]uestion 5 asks if Sandra Duma is at fault for the accident." It is also logical and probable, based on the record, that the jury found Question 7 asked it to determine Duma's percentage of fault for the accident, not fault for failure to wear a seatbelt. The "use of seatbelt" instruction given in this case without objection requires the jury to reduce the damages they *previously determined* in proportion to the injury Duma could have avoided if she had been wearing a seatbelt. "A jury is generally presumed to follow instructions given by the trial court, . . . ." *State v. Ellis,* 2001 ND 84, ¶ 23, 625 N.W.2d 544. The jury followed the instruction and found in answer to Questions 9–A and 9 that Duma was not wearing a seatbelt and could have avoided 100 percent of her injuries if she had been wearing one.

[¶ 14] We conclude the jury's special verdict was not perverse or clearly contrary to the evidence based on the jury instructions which became the law of the case. It is logical and probable that the jury found Duma was not at fault for the accident but that had she worn a seatbelt, 100 percent of her injuries could have been avoided.

### III

[¶ 15] During oral argument, Duma alluded to the issue of whether separating the questions of negligence and mitigation is inappropriate under our comparative fault law. This issue was not raised before the trial court, and we will not address an argument raised for the first time on appeal. *Peters–Riemers v. Riemers,* 2002 ND 49, ¶ 9, 641 N.W.2d 83.

### IV

[¶ 16] We affirm the judgment entered upon a jury verdict, ordering that Duma take nothing, dismissing the action on the merits, and granting the defendants costs and disbursements.

[¶ 17] GERALD W. VANDEWALLE, C.J., and DALE V. SANDSTROM, JJ., concur.

KAPSNER, Justice, concurring in the result.

[¶ 18] I reluctantly concur in the result. Only under the doctrine of the law of the case is this result affirmable. *Comstock Constr., Inc. v. Sheyenne Disposal, Inc.,* 2002 ND 141, ¶ 12, 651 N.W.2d 656.

[¶ 19] I am concerned the majority opinion leaves the impression that the methods used in *Halvorson v. Voeller*, 336 N.W.2d 118 (N.D.1983), based upon the law as it existed in 1983, is the correct method of assessing fault and the right to recover for injury after the adoption of N.D.C.C. §§ 32–03.2–01 to 32–03.2–02 in 1987. The result in this case points out the importance of correct jury instructions and the requirement that the trial court apply the law applicable at the time of Duma's injury. Although it was not done here, Duma failed to demonstrate she preserved the right to a new trial by making the proper objections.

[¶ 20] Duma asserts the jury's answers to the special verdict form are inconsistent and cannot be reconciled. Applying our modified comparative fault law in effect since 1987, I would agree. The jury allocated no fault to Duma and yet found 100% of her injuries could have been avoided had she worn her seat belt. On that basis, judgment was entered that she take nothing. Under the principles of modified comparative fault, articulated in N.D.C.C. § 32–03.2–02, those answers and that result are irreconcilable. Current law, however, is not the law that was applied in this case. Unfortunately, Duma has failed to preserve proper objections to challenge the validity of the jury verdict.

[¶ 21] The trial court and trial counsel treated *Halvorson* as if the method applied in that case survived the 1987 adoption of modified comparative fault. N.D.C.C. § 32–03.2–02. The jury was instructed in a manner that intermixed current negligence law applying modified comparative fault and prior negligence law in which an injured party's failure to avoid injury or to mitigate damages was separately considered and served as a separate basis to eliminate the right to recover damages. Only under such a regime can the result in

this case be considered logical and probable.

[¶ 22] Section 32–03.2–02, N.D.C.C., provides in part:

Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all other persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering. The court may, and when requested by any party, shall direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury. The court shall then reduce the amount of such damages in proportion to the amount of fault attributable to the person recovering.... Under this section, fault includes negligence, ... failure to avoid injury,....

[¶ 23] Under modified comparative fault, all fault which contributes *to the injury* must be weighed by the jury. N.D.C.C. § 32–03.2–02 (emphasis added). Fault specifically includes "failure to exercise reasonable care to avoid an injury or to mitigate damages." N.D.C.C. § 32–03.2–01; NDJI C—2.80. Under modified comparative fault, the jury does not first determine who was at fault for the accident and, later and separately, determine if the injury could have been avoided by the injured person. All of the contributing factors to the injury are weighed together for purposes of allocating percentages of fault. "The law makes no distinction between accident-causing fault and injury-causing fault. If you find fault, you must allocate the fault on a percentage basis between all persons legally responsible for

such fault, whether they are or ever were parties to this lawsuit." NDJI C—2.84.

[¶ 24] The special verdict form was not the problem in this case. Rather, the instructions given to this jury were hopelessly confusing and the response the trial judge gave to the question asked by the jury only added to the jury's misunderstanding of how to consider fault. On the one hand, the jury received an instruction on comparative fault following current law:

> You will return a special verdict in which you will make special findings of fact determining:
>
> 1) who was at fault, if anyone;
>
> 2) whether such fault was a proximate cause of damages;
>
> 3) the respective percentages of fault allocated to the defendant, the plaintiff or anyone else who contributed to proximately cause any damages;
>
> 4) the amount of plaintiff's damages without reduction for fault.
>
> The Court will determine from your special verdict form the amount of damages, if any, which are recoverable.

However, this jury was also instructed:

> It is the duty of a person who has been injured in person or property to exercise ordinary care to avoid loss or minimize the resulting damages. One who fails to do so cannot recover damages for any injury that could have been prevented by the exercise of ordinary care.

And in closing instructions, the jury was told, under an instruction that was adapted from *Halvorson* and correct in 1983 when that case was decided:

> Evidence was presented from which you find that the plaintiff was not using an available seatbelt and shoulder harness at the time of the accident. If you find (1) that it was unreasonable for the plaintiff not to use the seatbelt and shoulder harness and (2) that the plaintiff would not have received some or all of her injuries had she worn a seat belt and shoulder harness, then (3) the amount of damages awarded the plaintiff for the injuries she sustained, if any, must be reduced in proportion to the amount of injury she would have avoided by the use of a seatbelt and shoulder harness.

These contradictory instructions, taken from different stages in the development of North Dakota law, suggest the failure to use a seat belt negates any right to recover without first determining whether Duma's failure was fault and, if so, whether that fault exceeded the fault of others who contributed to her injuries.

[¶ 25] The jury's question indicated it was confused by the instructions. It specifically asked: "Please clarify question 5. Does question 5 ask if Sandra Duma is at fault for the accident or at fault for her injuries." The court responded: "Question 5 asks if Sandra Duma is at fault for the accident." The jury's question should have alerted both counsel and the court that the instructions either were confusing or did not accurately describe the law of modified comparative fault. Instead, the trial court compounded the problem, apparently without objection from counsel, by telling the jury to focus on fault for the accident, rather than the injury. Because appellant has not supplied a transcript, appellant has failed to demonstrate that she properly objected to the court's response to the jury's question. This misinformation given by the trial court explains a jury finding no fault on the part of Duma, even though there is a finding that 100% of her injuries could have been avoided by use of the seat belt.

[¶ 26] Unfortunately, Duma tried this case under pre-1987 law without objection.

The doctrine of the law of the case requires the result reached by the majority.

[¶ 27] WILLIAM A. NEUMANN, J., concurs.