2015 ND 44

**ROYAL JEWELERS INC., and GRB Financial Corporation, Plaintiffs and Appellees**

v.

**Sherri LIGHT, individually, and as Personal Representative of the Estate of Steven Light, Defendant and Appellant.**

No. 20140125.

Supreme Court of North Dakota.

Feb. 20, 2015.

Jon R. Brakke, Fargo, N.D., for plaintiffs and appellees.

Ronald H. McLean (argued) and Peter W. Zuger (on brief), Fargo, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Sherri Light, individually and as personal representative of the estate of Steven Light, appeals from a judgment entered after a bench trial determining GRB Financial Corporation held a valid and enforceable security interest in a ring purchased from Royal Jewelers, Inc., and authorizing GRB Financial to foreclose its security interest in the ring. We conclude the district court did not clearly err in finding the Lights did not manifest an intent that payments on an open credit account with Royal Jewelers would be applied first to the purchase price of the ring and in finding the Lights did not detrimentally rely on Royal Jewelers' monthly account statements. We further conclude the court did not err in determining GRB Financial had a valid and enforceable secu-

rity interest in the ring. We affirm the judgment.

I

[¶ 2] Royal Jewelers is a jewelry store in Fargo operated by three brothers, Richard, Brent and Gregory Olson. The brothers also own a separate corporation, GRB Financial, which operates as an indirect lender taking assignments of loans from retailers, including Royal Jewelers. Steven Light was a customer of Royal Jewelers for several years. In September 2009, Steven Light owed about $40,000 on his open credit account with Royal Jewelers.

[¶ 3] Steven and Sherri Light began a romantic relationship in 2008 and planned to marry in 2009. Sherri Light testified she did not want Steven Light to purchase her wedding ring from Royal Jewelers because she knew he had an outstanding debt with the store and GRB Financial. She claimed Steven Light assured her that he made arrangements with Gregory Olson at Royal Jewelers to apply any subsequent payments to first pay off a wedding ring and not to pay for his previous purchases.

[¶ 4] On October 2, 2009, Steven Light purchased a wedding ring for Sherri Light on his open credit account with Royal Jewelers. Royal Jewelers' charge receipt for the ring identified Steven Light's open credit account number and a purchase price of $55,050 on invoice number 346746. The charge receipt granted Royal Jewelers a security interest in the ring. According to Sherri Light, she accompanied Steven Light to Royal Jewelers on October 2, 2009, and she witnessed him verbally manifest his intent to Gregory Olson that all subsequent payments on his account would be credited toward the ring rather than toward his existing debt with Royal Jewelers. Gregory Olson stated no

agreement or manifestation of intent existed that any payments by Steven Light would first be applied toward the ring.

[¶ 5] On October 3, 2009, Steven Light issued a $25,500 check to Royal Jewelers, which was applied to the oldest purchases on his account. That check was returned for insufficient funds. According to Gregory Olson, Royal Jewelers' unsophisticated computerized accounting system could not reverse the payment by the NSF check to reflect the correct application of later payments by Steven Light on his account with Royal Jewelers. Gregory Olson claimed that failure resulted in Royal Jewelers' subsequent monthly statements to Steven Light erroneously stating the funds from the NSF check had been applied to Steven Light's oldest purchases and his subsequent payments in 2009 and 2010 were erroneously applied to his most recent purchases, including the ring. Royal Jewelers' monthly statements reflect Steven Light paid about $65,000 on his account from October 2009 through December 2010. Sherri Light stated Steven Light's payments were applied to the invoice number on the charge receipt for the ring and the ring was paid for by December 2010.

[¶ 6] In December 2010, Royal Jewelers, with Steven Light's consent, assigned Steven Light's debt with Royal Jewelers and the security for that debt to GRB Financial. Steven Light and GRB Financial executed a note modification agreement changing repayment terms, extending the maturity date of a prior note modification agreement between the parties and pledging nine additional items as security for modification, as described in an attached exhibit. The exhibit was not separately signed by Steven Light, but included the ring on a list of nine items.

[¶ 7] Steven Light died in February 2012. Royal Jewelers and GRB Financial sued Sherri Light, individually and as personal representative of Steven Light's estate, for a determination that GRB Financial had a valid security interest in the ring. After a bench trial, the district court found no stated preference or agreement existed between the Lights and Royal Jewelers that Steven Light's payments would be first applied to the ring. The court found even if an agreement existed, it was unenforceable under the statute of frauds because it was not in writing. The court determined that in the absence of any agreement or designation about how payments would be applied to Steven Light's debt, Royal Jewelers was entitled to apply his payments to first reduce the amount owed on his oldest purchases. The court also determined the evidence did not establish the Lights detrimentally relied on Royal Jewelers' monthly account statements about application of payments to Steven Light's account. The court further concluded Steven Light's gift of the ring to Sherri Light was subject to Royal Jewelers' security interest in the ring and GRB Financial, as an assignee of Royal Jewelers, had a valid and enforceable security interest in the ring.

II

[¶ 8] Sherri Light argues the district court clearly erred in determining the Lights did not manifest an intent or desire under N.D.C.C. § 9–12–07(1) that Steven Light's payments on his account to Royal Jewelers would be applied first to pay for the ring. She argues her testimony about Steven Light's assurances that he made arrangements with Royal Jewelers for application of his payments to the ring and about witnessing Steven Light's manifestation of that intent when the ring was purchased on October 2, 2009, is corroborated by Royal Jewelers' monthly account statements, indicating Steven Light's payments

were applied to pay for the ring and not for his prior purchases.

[¶ 9] Section 9–12–07, N.D.C.C., provides:

"When a debtor under several obligations to another does an act by way of performance, in whole or in part, which is applicable equally to two or more of such obligations, such performance must be applied as follows:

"1. If, at the time of the performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation is manifested to the creditor, it must be applied in such manner.

"2. If no such application is then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation the performance of which was due to the creditor from the debtor at the time of such performance, except that if similar obligations were due to the creditor both individually and as a trustee, unless otherwise directed by the debtor, the creditor shall apply the performance to the extinction of all such obligations in equal proportion. An application once made by the creditor cannot be rescinded without the consent of the debtor.

"3. If neither party makes such application within the time prescribed herein, the performance must be applied to the extinction of obligations in the following order, and if there is more than one obligation of a particular class, to the extinction of all in that class ratably.

a. Of interest due at the time of the performance.

b. Of principal due at the time of performance.

c. Of the obligation earliest in date of maturity.

d. Of an obligation not secured by a lien or collateral undertaking.

e. Of an obligation secured by a lien or collateral undertaking."

[¶ 10] In 1891, this Court construed the language currently found in N.D.C.C. § 9–12–07 in harmony with the common law rule authorizing a debtor to designate the application of payments to particular obligations and permitting a debtor to manifest an intent to apply payments to a specific obligation either before performance or at the time of performance. *First Nat'l Bank v. Roberts*, 2 N.D. 195, 199, 49 N.W. 722, 722–23 (1891). *See* 60 Am. Jur. 2d *Payment* § 55 et seq. (2014) (explaining common law rule authorizing debtor to dictate appropriation of payments to creditor to particular obligations). In *Roberts*, this Court explained:

"it is further urged that the application of this money to the payment of this note was not made at the time of the payment of the money to the bank, but some time prior thereto; and that, under the provisions of our statute, the debtor must manifest his desire as to the application of the payment at the very time the money is paid. Section 3457, subd. 1, Comp. Laws [Territory of Dakota 1887]. We think this is a too technical construction of the statute,— one which loses sight of its obvious purpose. It was not designed to change the rule of the common law. The owner of money assuredly may determine the terms on which another shall receive it from him when he voluntarily parts with it. It is his, and he may control it up to the time he surrenders his control over it. He may insist that the creditor shall apply it in a certain way as the only condition on which he, the debtor, will pay it to the creditor. It is sufficient if

the will of the debtor is manifested to the creditor at the time. This is all the statute, in its most technical wording, requires. If, as in this case, in the course of negotiations and dealings connected with the future payment of money to a creditor the debtor distinctly manifests his intention as to the application of it or of any part of it, and that purpose is not changed before the receipt by the creditor of the money, then in truth the intention—the design—of the debtor is manifested at the time the money is paid. If the statute is to have a technical construction,—one which makes it necessary for the debtor to speak his mind at the precise moment he parts with the money,—he must take care that no appreciable time elapses after he has expressed his will, and before he actually makes the payment. We cannot, by such an interpretation, shut our eyes to the palpable spirit of this enactment."

2 N.D. at 199, 49 N.W. at 722–23.

[¶ 11] The district court found the Lights had no agreement and did not at any time manifest an intent or desire to apply any of Steven Light's payments first to the ring. In *Edward H. Schwartz Constr., Inc. v. Driessen*, we described our standard of review of an oral agreement, which Sherri Light agrees also applies to the issue of manifestation of intent:

"The existence of an oral contract and the extent of its terms are questions of fact, subject to the 'clearly erroneous' standard of review under N.D.R.Civ.P. 52(a). *Forster v. West Dakota Veterinary Clinic, Inc.*, 2004 ND 207, ¶ 57, 689 N.W.2d 366; *Comstock Constr., Inc. v. Sheyenne Disposal, Inc.*, 2002 ND 141, ¶ 13, 651 N.W.2d 656. In *Brandt v. Somerville*, 2005 ND 35, ¶ 12, 692 N.W.2d 144 (citations omitted) we re-

cently outlined our scope of review under the 'clearly erroneous' rule:

"A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the trial court made a mistake. A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because. we may have viewed the evidence differently does not entitle us to reverse the trial court. On appeal, we do not reweigh conflicts in the evidence, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses."

2006 ND 15, ¶ 6, 709 N.W.2d 733.

[¶ 12] The parties presented conflicting testimony about an agreement and manifestation of Steven Light's intent when he made payments on the account. Sherri Light stated Steven Light assured her that he made arrangements with Royal Jewelers to apply his payments to the ring and she was present at Royal Jewelers on October 2, 2009, when Steven Light manifested his intent to apply his payments first to the ring. According to Gregory Olson, no agreement or manifestation of intent existed when the payments were made. Evidence supports the court's finding that the Lights did not have an agreement with Royal Jewelers or manifest an intent or desire to apply payments first to the ring, and we decline Sherri Light's invitation to reweigh the evidence. We are not left with a definite and firm conviction the court made a mistake and conclude the court did not clearly err in finding the Lights did not manifest an intent or desire for application of payments to the ring. Because we conclude the court's findings on this issue are not clearly erroneous, we

do not address the parties' arguments about whether any claimed agreement or manifestation of intent must be in writing under N.D.C.C. § 9–06–04.

## III

[¶ 13] Sherri Light argues the district court erred in determining the Lights did not detrimentally rely on Royal Jewelers' monthly account statements to support her claim the ring was paid for by December 2010. She claims Royal Jewelers and GRB Financial are estopped under N.D.C.C. § 31–11–06 from claiming the ring had not been fully paid for by December 2010. The provision provides:

"When a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

[¶ 14] In *Blocker Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912, 920 (N.D. 1984), this Court described the elements of an estoppel claim:

"As to the person being estopped the elements are: 1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; 2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence the other party or persons; and 3) knowledge, actual or constructive, of the real facts. As to the person claiming estoppel the elements are: 1) lack of knowledge and the means of knowledge of the truth as to the facts in question; 2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and

3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."

[¶ 15] This Court repeatedly has recognized estoppel is generally a question of fact. *Erickson v. Brown*, 2012 ND 43, ¶ 15, 813 N.W.2d 531; *Nelson v. Johnson*, 2010 ND 23, ¶ 30, 778 N.W.2d 773; *Conrad*, 354 N.W.2d at 920; *Peterson Mech., Inc. v. Nereson*, 466 N.W.2d 568, 571 (N.D. 1991).

[¶ 16] Here, the district court described the circumstances of Royal Jewelers' inaccurate monthly statements to Steven Light, including the NSF check issued by him and the company's unsophisticated computerized accounting system. The court explained the result of that accounting system was that Royal Jewelers' monthly statements "made it appear the oldest items (items owing older than the Ring) on the account had been paid with the $25,500.00 NSF check and that more recent payments were being applied to newer debt on the account," including the ring. The court found that, with the exception of the inaccurate NSF check entry on the monthly statements, the statements showed all payments on Steven Light's open account being applied first to the oldest purchase. The court determined a preponderance of evidence did not show Steven or Sherri Light relied to their detriment on Royal Jewelers' incorrect monthly account statements. Evidence supports the court's findings about the monthly statements and that the Lights did not detrimentally rely on the statements. Steven Light was entitled to manifest an intent to apply payments on his obligations to Royal Jewelers regardless of the monthly statements, and we decline to reweigh the evidence about the Lights' lack of detrimental reliance on those state-

ments. We are not left with a definite and firm conviction the court made a mistake in finding the Lights failed to establish they detrimentally relied on Royal Jewelers' monthly account statements. The court did not clearly err in rejecting Sherri Light's estoppel claim.

## IV

■ [¶ 17] Sherri Light claims the district court erred in determining GRB Financial had a valid and enforceable security interest in the ring. To the extent her argument hinges on her claim there was an agreement or manifestation of intent that Steven Light's payments be applied first to the ring and the ring was paid off by December 2010, we reject the claim. Royal Jewelers' invoice for Steven Light's purchase of the ring states the ring was subject to a security interest, and the security interest followed the ring when in December 2010 Royal Jewelers, with Steven Light's consent, assigned his debt and the security interest to GRB Financial.

[¶ 18] Sherri Light also claims the note modification agreement signed by Steven Light in December 2010 did not properly authenticate the agreement describing the collateral under N.D.C.C. § 41–09–13(2)(c)(1) because he did not separately sign the exhibit identifying secured, collateral, including the ring.

[¶ 19] Section 41–09–13(2)(c)(1), N.D.C.C., provides:

"2. Except as otherwise provided in subsections 3 through 9, a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

. . . .

c. One of the following conditions is met:

(1) The debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned."

The plain language of that statute requires a debtor to authenticate a security agreement providing a description of the collateral. "Authenticate" means "to sign" or "[t]o execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record." N.D.C.C. § 41–09–02(1)(g). Section 41–09–08(2), N.D.C.C., says a description of collateral is sufficient if it reasonably identifies the collateral and may include a specific listing or any other method by which the collateral is objectively determinable.

[¶ 20] Sherri Light cited no authority requiring a debtor to separately sign an exhibit attached to and referenced in a signed security agreement, and we have found none. Some authorities recognize a security agreement is not unenforceable merely because a description of collateral in an exhibit was attached to the security agreement after the agreement was signed. *See In re O & G Leasing, LLC,* 456 B.R. 652, 665–67 (Bankr.S.D.Miss. 2011); *In re Levine's Delicatessen & Rest., Inc.,* 53 B.R. 430, 432–33 (Bankr.S.D.N.Y. 1985). *See* 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 31–3(b) (6th ed.2009) (attachment can happen seriatim and need not occur in particular order); 8A Lary Lawrence, *Lawrence's Anderson On the Uniform Commercial Code* § 9–203:79 (3d ed.1996–2005) (fact that security agreement was signed before description of collateral was added does not invalidate security interest in absence of fraud, mistake or undue influence; Article 9 does not describe any sequence for creation of security interest). Other authorities also recognize that several documents may be considered togeth-

er as a security agreement under the doctrine of incorporation by reference. *See Pontchartrain State Bank v. Poulson,* 684 F.2d 704, 707 (10th Cir.1982); *In re Numeric Corp.,* 485 F.2d 1328, 1331–32 (1st Cir.1973); *Compass Bank v. Kone,* 134 P.3d 500, 503–04 (Colo.Ct.App.2006).

[¶ 21]   Steven Light signed the December 2010 note modification agreement which referenced an attached exhibit listing assets pledged as security for the note. Brent Olson testified the attached exhibit listing the ring was part of the security modification agreement signed by Steven Light, and the district court determined the modification agreement was properly executed by Steven Light.   Evidence establishes Steven Light initially granted a valid security interest in the ring and the ring had not been fully paid for in December 2010.   GRB Financial received an assignment of the security interest from Royal Jewelers in December 2010, and the court did not err in finding GRB Financial had a valid and enforceable security interest in the ring and in authorizing GRB Financial to foreclose that security interest.

V

[¶ 22]   We affirm the judgment.

[¶ 23]   GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, and DALE V. SANDSTROM, JJ., and TODD L. CRESAP, D.J., concur.

[¶ 24]   The Honorable TODD L. CRESAP, D.J., sitting in place of KAPSNER, J., disqualified.