Edward D. VANOVER, Plaintiff,
Appellant and Cross–
Appellee,

v.

KANSAS CITY LIFE INSURANCE COM-
PANY, a corporation, and James B.
Slusher, Defendants, Appellees and
Cross–Appellants.

Civil No. 960002.

Supreme Court of North Dakota.

Sept. 3, 1996.

Ralph A. Vinje (argued), of Vinje Law Firm, Bismarck, for plaintiff, appellant and cross-appellee. Appearance by Edward D. Vanover.

Lyle W. Kirmis (argued), of Zuger Kirmis & Smith, Bismarck, for defendants, appellees and cross-appellants. Appearance by Lawrence A. Dopson.

NEUMANN, Justice.

Edward D. Vanover has appealed a district court amended judgment for $250 in his suit against Kansas City Life Insurance Company (Kansas City) and James B. Slusher, its associate general counsel. Kansas City and Slusher cross-appealed the amended judgment and the trial court's order denying their motion for judgment as a matter of law under Rule 50(b), N.D.R.Civ.P., or, alternatively, for a new trial under Rule 59, N.D.R.Civ.P. We modify the judgment and affirm.

Vanover was a general agent for Kansas City and for Armour Life Insurance Company (Armour), a subsidiary of Kansas City, until terminated in 1983, after Vanover and Armour got into a dispute over unpaid commissions. After Vanover indicated he was going to sue Armour for the unpaid commissions, Armour terminated its relationship with Vanover. Kansas City soon terminated Vanover, as well. Vanover then became an agent for Globe Life and Accident Insurance Company (Globe) and American Health and Life Insurance Company (American). Vanover sued Armour for unpaid commissions and sued Kansas City for wrongful termination. On March 25, 1986, Vanover sent letters to a number of Kansas City agents and included parts of a deposition of Joseph R. Bixby, then President of Kansas City, taken during discovery proceedings in Vanover's suits against Armour and Kansas City. On April 7, April 9, and April 22, 1986, Slusher sent letters to all Kansas City general agents, to American, and to Globe, respectively, stating Vanover had been terminated "for cause." Vanover was terminated by Globe and American shortly after they received those letters.

In 1987, Vanover sued Kansas City and Slusher (collectively referred to as Kansas City) for defamation, alleging Kansas City had made unprivileged and false statements by letter and telephone that he had been terminated "for cause." The trial court granted Kansas City's motion for summary judgment. This court reversed the summary judgment and remanded for further proceedings for the trial court to "determine if the statements that Vanover was 'terminated for cause' are reasonably susceptible of a defamatory construction." *Vanover v. Kansas City Life Ins. Co.*, 438 N.W.2d 524, 527 (N.D. 1989).

On remand, the case was tried to a jury, which returned a verdict finding Vanover had been libeled and slandered and awarding him damages of $1,000,250. Kansas City moved for judgment notwithstanding the verdict or for a new trial. The trial court concluded it had erred in using a verdict form that did not separate the jury's findings of fact on each of the three allegedly defamatory publications, and granted the motion for a new trial. The trial court granted a request for certification under Rule 54(b), N.D.R.Civ.P., ruling there was no just reason to delay entry of final judgment. Vanover appealed from the order granting a new trial. Kansas City cross-appealed from the trial court's implicit denial of its motion for judgment notwithstanding the verdict. This court concluded that "the trial court abused its discretion in granting a Rule 54(b) certification," and dismissed the appeal and cross-appeal. *Vanover v. Kansas City Life Ins. Co.*, 535 N.W.2d 424, 427 (N.D. 1995).

At the new trial, the jury returned a verdict finding the statements in the letters to all Kansas City general agents, to Globe, and to American, that Vanover had been termi-

nated for cause were defamatory; that the defendants knew the statements were false or probably false; that some persons to whom each of the letters were sent understood the statement to be defamatory and that Vanover's reputation was damaged in their eyes; and that the defendants made the statements with malice. The jury awarded Vanover damages. Judgment was entered against Kansas City for $1,900,250, with interest at 12 percent per year.[1] Kansas City moved to correct the judgment. The trial court ordered the judgment amended to award Vanover damages of only $250. Judgment was entered accordingly. Vanover appealed and Kansas City cross-appealed.

■■■ Vanover contends the trial court erred in vacating the jury verdict returned in the first trial and ordering a new trial. A trial court's order granting a new trial will not be disturbed on appeal unless there was an abuse of discretion, which occurs if the trial court acts unreasonably, arbitrarily, or unconscionably. *Delzer v. United Bank*, 527 N.W.2d 650 (N.D.1995); *Okken v. Okken*, 325 N.W.2d 264 (N.D.1982). Because "the granting of a new trial merely results in the trial of the case to another jury," instead of ending the case, "we require a strong showing that the trial court abused its discretion." *Okken* at 269. "[I]t is rare that the appellate court is justified in preventing such a new trial." *Lange v. Cusey*, 379 N.W.2d 775, 777 (N.D.1985). "We will thus uphold the granting of a new trial even though the trial court would have been justified in reaching a different conclusion, and even though we might have deemed a different conclusion the better one." *Id.*

In vacating the first jury verdict and ordering a new trial, the trial court ruled that it had committed a gross error in submitting its verdict form to the jury, because it did not differentiate which, or if all, publications were defamatory, unprivileged, damag-

ing, or done maliciously. Vanover argues there was only one publication, to numerous recipients, and only one defamation, so only one finding of damages, other than exemplary, was necessary to support the verdict. He also argues the jury found all elements of defamation as to each class of recipients. We disagree. There were three letters constituting three publications to three groups of people. The special verdict form allowed the jury to determine the damages arising from each letter without first finding if each letter met all of the requirements of defamation, as the court instructed. We are not persuaded the trial court abused its discretion in vacating the first verdict and ordering a new trial.

In its memorandum opinion amending the judgment to award only $250 to Vanover after the second trial, the trial court noted the jury had made the following damage awards for Kansas City's letters to its agents, American, and Globe:

"1. To Kansas City Life Agents:

| | | |
|---|---|---|
| Special damages | —$ | 0.00 |
| Compensatory damages | —$ | 150,000.00 |
| Exemplary damages | —$ | 150,000.00 |

"2. To American Health and Life:

| | | |
|---|---|---|
| Special damages | —$ | 250.00 |
| Compensatory damages | —$ | 0.00 |
| Exemplary damages | —$ | 250,000.00 |

"3. To Globe Life and Accident:

| | | |
|---|---|---|
| Special damages | —$ | 500,000.00 |
| (consisting of lost profits) | —$ | 500,000.00 |
| Compensatory damages | —$ | 50,000.00 |
| Exemplary damages | —$ | 300,000.00 |
| | | $1,900,250.00" |

The trial court ruled:

"As a matter of law, the only portion of this verdict which can stand is the $250 award for special damages as to the American Life communication. The remaining awards of damages are ordered set aside.

\* \* \* \* \* \*

"... in a defamation action (libel or slander per quod), there must be special damages before there can be compensatory

---

1. The jury found Vanover had sustained "special monetary damages" of $500,000 as a result of the letter to Globe, which included lost profits of $500,000. Thus, the letter to Globe caused damages of $500,000. The judgment entered on September 21, 1995, included that $500,000 twice. The trial court noted the judgment awarded a double recovery by awarding the $500,000 twice

and ordered a reduction of $500,000 if the damages were not set aside. In his brief on appeal, Vanover stated he would "accept a reduction of the total judgment of $1,900,250.00 to $1,400,-250.00, rather than resort to a new trial." Thus, we modify the judgment to award $1,400,250, rather than $1,900,250.

damages before there can be exemplary damages.

"It therefore follows that as a matter of law the entire award for the communication to Kansas City Life agents (Question 1) (compensatory and exemplary damages) must fail since the jury found no special damages.

"As to Question 2, the American Health communication, the jury found special damages of $250 and since it found no compensatory damages, the $250,000 exemplary damages award must fail.

"As to Question 3, the Globe Life and Accident communication, the entire award must fail. The jury found $500,000 special damages, and since special damages means a pecuniary loss (past-not prospective) or an actual out-of-pocket monetary loss, and since the record in this case wholly fails to show any *actual* present, not future pecuniary loss to the plaintiff caused by this communication (let alone $500,000!), the compensatory and exemplary awards must fail because the special damage award fails."

■ Counsel for Slusher and Kansas City conceded at oral argument that the trial court erred in ruling that special damages are not compensatory damages. We agree. Special damages are a type of compensatory damages.

■ Damages is a compensation in money for detriment caused by another's act or omission. Section 32–03–01, N.D.C.C. There are three broad categories of damages — nominal damages, punitive damages, and compensatory damages, which compensate for pecuniary loss, such as out-of-pocket expenses, economic loss, such as lost income, and physical and mental suffering. Marylin

Minzer, et al., *Damages in Tort Actions* § 1.01 (1996). "Compensatory damages . . . often . . . called 'actual damages' . . . seek[ ] . . . to restore the plaintiff to his position prior to the tortious act, insofar as money damages may do so." *Id.*, § 1.01[3]. Compensatory damages "may include both 'general' damages—'damages for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated and hence need not be alleged in order to be proved' and 'special' damages—'damages for a harm other than one for which general damages are given.'" *Id.*, quoting *Restatement (Second) of Torts* § 940. Our legislature has categorized compensatory damages for wrongful death or injury to person as either "economic damages" or "noneconomic damages."[2]

■ Our libel statute provides:

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

Section 14–02–03, N.D.C.C. Our statute adopted the common-law definition of libel. *Lauder v. Jones*, 13 N.D. 525, 101 N.W. 907 (1904).

Ordinarily, one who libels another is subject to liability without proof of special damages. Laurence H. Eldredge, *The Law of Defamation*, § 12, p. 77 (1978). "Since 1812 it has been the clearly settled English common law that in an action for libel the plaintiff can recover damages without pleading or proving that he has suffered any harm at

---

**2.** *"32–03.2–04. Economic and noneconomic damages for wrongful death or injury to person.* In any civil action for damages for wrongful death or injury to a person and whether arising out of breach of contract or tort, damages may be awarded by the trier of fact as follows:

"1. Compensation for economic damages, which are damages arising from medical expenses and medical care, rehabilitation services, custodial care, loss of earnings and earning capacity, loss of income or support, burial costs, cost of substitute domestic services, loss of employment or business or employment opportunities and other monetary losses.

"2. Compensation for noneconomic damages, which are damages arising from pain, suffering, inconvenience, physical impairment, disfigurement, mental anguish, emotional distress, fear of injury, loss or illness, loss of society and companionship, loss of consortium, injury to reputation, humiliation, and other nonpecuniary damage."

all." *Id.*, § 17, p. 93. "One who falsely publishes matter defamatory of another in such a manner as to make the publication a libel is subject to liability to the other although no special harm results from the publication." *Restatement (Second) of Torts* § 569.

Some courts, however, have created what Professor Eldredge has called "the spurious rule of libel per quod." Eldredge, *supra*, § 17, p. 93. Under this rule, "when the published communication is innocent on its face and requires a reference to extrinsic facts to establish the defamatory meaning the plaintiff cannot recover any damages unless he pleads and proves that the libel caused special harm (damage) to him." Eldredge, *supra*, § 17, pp. 93–4. North Dakota has followed that rule. *Ellsworth v. Martindale–Hubbell Law Directory, Inc.*, 66 N.D. 578, 268 N.W. 400, 407 (1936) ("The libel so pleaded is per quod, and as we have held in the original opinion, must be accompanied by allegations of defamatory understanding and special damages in order to present a cause of action.").

The requirement of proving special damages in a libel action is a minority rule. The decisions of only six states specifically require proof of special damages, while dicta in five other states' decisions do so. Eldredge, *supra* at § 24. The trend in the decisions is toward increasing acceptance of *Restatement (Second) of Torts* § 569 and the settled English rule. Eldredge, *supra* at § 23. Thus, the trend is toward increasing acceptance of the majority rule, which allows recovery in libel actions without proof of special damages. Most people consider their reputation "a major factor in a satisfactory existence." *Toney v. WCCO Television*, 85 F.3d 383, 395 (8th Cir.1996). We recognize that "[t]he great function of an action of libel, to provide a public vindication of the decent citizen's good name, is completely wiped out in a great number of cases by requiring" proof of special damages. Eldredge, *supra* § 24 at 176. Furthermore, requiring proof of special

damages imposes a condition not required by our libel statute.

We conclude it is inappropriate to continue to require proof of special damages in libel actions in which the published communication requires reference to extrinsic facts to establish a defamatory meaning, and we overrule *Ellsworth* to the extent that it requires proof of special damages for recovery in an action for libel per quod. Accordingly, proof in a libel action of any compensatory or actual damages will support an award of exemplary damages. *See* former § 32–03–07, N.D.C.C., and § 32–03.2–11, N.D.C.C. (jury may award exemplary damages in addition to actual damages, if there was oppression, fraud, or malice by the defendant); *Rickbeil v. Grafton Deaconess Hosp.*, 74 N.D. 525, 23 N.W.2d 247 (1946) (jury may award punitive damages in addition to actual damages in a libel action).

Kansas City contends there is no legally sufficient evidence that Vanover sustained any special damages or damage to reputation because of the three letters. This court exercises "a limited review of jury findings." *Schutt v. Schumacher*, 548 N.W.2d 381, 382 (N.D.1996). "We view the evidence in the light most favorable to the verdict and determine only whether there is substantial evidence to support it." *Id.* We "will set aside a special verdict 'only when it is perverse and clearly contrary to the evidence.'" *Id.*, quoting *Reisenauer v. Schaefer*, 515 N.W.2d 152, 157 (N.D.1994).

Viewing the evidence in the light most favorable to the verdict, we conclude there is substantial evidence that Vanover's reputation was damaged in the eyes of some of the recipients of each of Kansas City's "for cause" letters. Therefore, we uphold the jury verdict awarding compensatory damages for injury to Vanover's reputation by the "for cause" letters sent to the Kansas City general agents ($150,000),[3] and to Globe ($50,000). The jury did not award compensa-

---

**3.** The jury found damage of $150,000 for injury to Vanover's reputation as a result of Slusher's letter to the general agents. Kansas City contends the jury should not have reached that question because it was not to answer it unless it awarded special damages, which it did not do. In light of our conclusion that a libel plaintiff need not prove special damages to recover damages for defamation, this is a matter of no great moment and we will not address it further.

tory damages for injury to Vanover's reputation as a result of the "for cause" letter sent to American.

The jury found Vanover sustained special damages of $250 as a result of Kansas City's "for cause" letter to American. Kansas City contends there was insufficient evidence for that finding, asserting Vanover spent $250 to get rehired after being terminated by American for violating his contract with American by using its letterhead to attack Kansas City. Vanover testified he was terminated by American for unauthorized use of American written materials, "with the addition of the for-cause issue." The jury could well have determined that Vanover spent $250 to get rehired by American, which would have been unnecessary if Kansas City had not sent the defamatory "for cause" letter to American. Viewing the evidence in the light most favorable to the verdict, we conclude there is substantial evidence supporting the jury's award of special damages of $250 as a result of the "for cause" letter to American.

The jury found Vanover had sustained special damages of $500,000 in lost profits as a result of Kansas City's "for cause" letter to Globe. Kansas City contends there is insufficient evidence to support the finding. Before Globe received Kansas City's "for cause" letter, it had agreed to finance and set up a captive reinsurance company for Vanover. After receiving the "for cause" letter, Globe terminated Vanover. Although Vanover later received another contract with Globe, the opportunity for his own captive reinsurance company was gone. Kansas City contends, as the trial court ruled, that Globe decided to abandon the captive insurance company proposal made to Vanover before it received the "for cause" letter from Kansas City, and, therefore, the libel could not have caused the special damage found by the jury.

Kansas City's "for cause" letter to Keith Ryan, Globe's associate general counsel, was dated April 22, 1986. Keith Brandon, Globe's Vice–President, terminated Vanover's agency agreement with Globe on May 2, 1986. Vanover testified that as of the day before Globe terminated his agency agreement with it because of Kansas City's "for cause" letter, Globe was still planning to finance a captive insurance company for him, as it had earlier promised to do:

"On May 1, 1986, I had a tape-recorded conversation with Keith Brandon and he indicated, yes, they were—he was coming up on May 7. Everything was cool. He also told me that Globe was thinking about getting out of the credit insurance business, and so I might need to get another company to administer my own company, but, yes, they were still going to loan me the money to do that as of May 1. May 2, things changed."

Thus, there was evidence from which the jury could find that Globe had not abandoned its promise to finance a captive insurance company for Vanover and that the "for cause" letter did cause special damages.

■ Kansas City also contends Vanover's future profits were too speculative to support a damage award. In an exhibit received without objection, however, Globe projected net income of more than $500,000 for the proposed captive reinsurance company. There was substantial evidence to support the jury's finding that Kansas City's "for cause" letter to Globe caused Vanover $500,000 in lost profits.

Kansas City contends the trial court should have entered judgment notwithstanding the verdict after the first trial because there was an insufficient evidentiary basis for a finding of special damages resulting from any of the "for cause" letters. Our conclusion that there is sufficient evidence for the jury's damage awards disposes of this contention.

■ The jury awarded exemplary damages of $150,000 as a result of the letter to all Kansas City general agents, $250,000 as a result of the letter to American, and $300,000 as a result of the letter to Globe. Kansas City contends there is no legally sufficient basis for awarding punitive damages as a result of any of the "for cause" letters. Kansas City argues, (1) there was no evidentiary basis for any damages as a result of any of the letters, making punitive damages unavailable; (2) by "for cause," Kansas City meant only valid business reasons for terminating Vanover, and there is no clear and convincing

evidence of malice on the part of Kansas City; and (3) the award of $250,000 in punitive damages for the letter to American, for which the jury awarded only $250 in special damages, is excessive because it is so great as to indicate passion or prejudice by the jury.

Section 32–03–07, N.D.C.C., which was in effect when this action was brought, provided:

"In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

We have already determined there was a sufficient evidentiary basis for each of the jury's compensatory damage awards, making punitive damages recoverable. What Kansas City meant when it used the phrase "for cause," what the recipients of the letters thought "for cause" meant, and whether Kansas City acted with malice, were all questions of fact for the jury. The jury resolved those questions against Kansas City, and we have found no reasons to interfere with the jury's resolution of those questions.

 With regard to the amount of punitive damages awarded as a result of Kansas City's letter to American, the amount of exemplary or punitive damages to award in a defamation action lies within the jury's sound discretion. *Skjonsby v. Ness*, 221 N.W.2d 70 (N.D.1974). An award of punitive damages need not be reasonably proportionate to an award of compensatory damages. *Olmstead v. Miller*, 383 N.W.2d 817 (N.D. 1986). A punitive damage award is excessive, however, if it "is so great that it indicates passion or prejudice on the part of the jury." *Dewey v. Lutz*, 462 N.W.2d 435, 443 (N.D.1990). From our review of the record, " 'we are unable to give a safe ground upon which we can say that the verdict is so excessive as to justify our interference therewith.' " *Hopkins v. McBane*, 427 N.W.2d 85, 95 (N.D.1988), quoting *Schultz v. Winston & Newell Co.*, 68 N.D. 674, 682, 283 N.W. 69, 73–4 (1938). We conclude the punitive damage award for the letter to American is not excessive.

 Vanover has requested that we order the trial court to award him costs and disbursements. Rule 54(e), N.D.R.Civ.P., provides in part:

"Costs and disbursements must be allowed as provided by statute. A party awarded costs and disbursements shall submit to the clerk a detailed, verified statement thereof. Upon receipt of the statement, the clerk shall allow those costs and disbursements and insert them in the judgment. A copy of the statement must accompany the notice of entry of judgment."

Vanover had judgment entered on September 21, 1995. Vanover served notice of entry of judgment on September 21, 1995. Vanover did not, before entry of judgment, submit to the clerk a statement of costs and disbursements, as required by Rule 54(e). Vanover also did not serve a copy of the statement with the notice of entry of judgment, as required by Rule 54(e). Instead, Vanover filed a motion, on October 9, 1995, to amend the judgment to include costs and disbursements. The trial court denied the motion because of Vanover's failure to comply with Rule 54(e). In light of Vanover's failure to comply with Rule 54(e), the trial court did not abuse its discretion in denying Vanover's motion to amend the judgment to include costs and disbursements. We, therefore, deny Vanover's request that we order the trial court to award costs and disbursements.

The amended judgment is affirmed to the extent that it awards damages of $250 to Vanover as a result of the letter to American. The amended judgment is modified to include $1,400,000 in additional damages awarded by the jury in the second trial. As modified to award Vanover damages of $1,400,250, the judgment is affirmed. The trial court's order denying the defendants' motion for judgment as a matter of law, or, alternatively, for a new trial, is affirmed.

VANDE WALLE, C.J., and SANDSTROM, MESCHKE and MARING, JJ., concur.