2004 ND 207

**Alissa FORSTER, VMD, Plaintiff, Appellee and Cross–Appellant**

v.

**WEST DAKOTA VETERINARY CLINIC, INC., and Kim Brummond, D.V.M., Defendants, Appellants and Cross–Appellees.**

No. 20040061.

Supreme Court of North Dakota.

Nov. 4, 2004.

Rebecca S. Thiem (argued) and Tracy Lynn Vigness Kolb (appeared), Zuger Kirmis & Smith, Bismarck, N.D., for plaintiff, appellee and cross-appellant.

J. Matthew Berner (argued), Katherine C. Bloomquist (appeared), Bloomquist & Berner, LLC, Edina, MN and Todd D. Kranda (appeared), Kelsch, Kelsch, Ruff & Kranda, Mandan, N.D., for defendants, appellants and cross-appellees.

SANDSTROM, Justice.

[¶ 1] West Dakota Veterinary Clinic, Inc. ("Clinic"), and Kim Brummond appealed from a judgment entered on a jury verdict awarding Alissa Forster $264,884.57 in damages, attorney fees, costs, and disbursements in Forster's defamation action against them. The Clinic and Brummond also appealed from orders denying their motions for judgment notwithstanding the verdict and for a new trial. Forster appealed from a judgment dismissing her employment contract claim against the Clinic and from an order denying her motion to alter or amend that judgment. We conclude there is sufficient evidence to support the jury's verdict in the defamation action, and the district court did not commit reversible error in its instructions to the jury or in its evidentiary rulings during trial. We also conclude the district court's implied finding that Forster and the Clinic did not reach an agreement for employment for a definite term, and that Forster was therefore an at-will employee, is not clearly erroneous. We affirm.

I

[¶ 2] Brummond received her veterinary medicine degree in 1984, and in 1986, she established the Clinic in Dickinson. Forster received her veterinary medicine doctorate in 1994 and became licensed to practice in North Dakota in 1995. In 1997, while Forster was working in Glen Ullin, Brummond contacted Forster and asked whether she would be interested in working at the Clinic. Forster and the Clinic eventually entered into a written two-year employment contract for Forster to work as an associate veterinarian beginning April 1, 1998, and ending April 1, 2000. Under the terms of the employment contract, Forster was to receive an annual salary of $36,000 plus benefits, including payment of her annual licensing fee, annual dues, malpractice insurance, and group health and life insurance.

[¶ 3] Shortly before the written agreement expired, in March 2000, Brummond asked Forster whether she intended to continue working at the Clinic. According to Forster, the parties agreed to renew the previous contract for an additional year and she would continue to receive the benefits listed in the written contract. According to Brummond, the parties did not agree to an additional year of employment, and Forster was intended to work as an at-will employee. Although Forster continued to work for the Clinic beyond the initial contract expiration date of April 1, 2000, the parties did not enter into another written employment agreement.

[¶ 4] During September 2000, Brummond's friend, Bonnie Orvedahl, reported to the State Veterinarian's Office that Forster was abusing a horse, boarded at Orvedahl's property, by riding the horse too hard for its health and age. The State Veterinarian contacted Forster on Septem-

ber 28, 2000, and Forster told him the horse had a nerve injury and was not being ridden. No formal abuse charges were brought against Forster.

[¶ 5] On October 2, 2000, Brummond presented Forster with a "Probation Agreement" setting forth a list of conditions Forster was required to comply with to remain employed at the Clinic. The document contained provisions addressing "improvement of client relations," "treatment of support staff," and "improvement of employer/employee relationship." The document provided, "Failure to sign this agreement within 48 hours of its presentation will be construed by the employer as the employee exercising her option to terminate employment." Forster refused to sign the agreement, removed her belongings from the Clinic, and returned her key to the Clinic. Forster then applied for unemployment benefits. Brummond disputed the application for benefits, claiming Forster had resigned, Forster had been the subject of an animal abuse complaint, and Forster had sold prescription medication across state lines without Brummond's knowledge or consent while employed at the Clinic. Forster claimed she had received permission from Brummond to ship the medication and the purchaser sent a check for payment in Forster's name to the Clinic. Forster offered to endorse the $45 check to the Clinic, but Brummond did not present the check to Forster for her signature. Forster was awarded unemployment benefits.

[¶ 6] On November 17, 2000, Brummond reported to the Dickinson police that the Clinic had been burglarized and that although there were no signs of forced entry and no money was missing from the Clinic, two bottles of medication had been taken. Brummond told police she suspected Forster had entered the Clinic because Forster had a horse that needed to be euthanized and Forster did not have a license that would allow her to purchase or possess the euthanasia medication. Brummond also told the police she had previously suspected Forster of illegal activities, she had a check showing Forster had illegally shipped prescription medication to a friend in Utah, there was a constant flow of those shipments, Forster had a key to the Clinic, and medications disappeared from other places Forster had worked. Dickinson police contacted the man who was boarding Forster's horse, and he told them the horse was fine. Police also contacted Forster, who explained that her horse did not have to be euthanized and that she had the necessary license to purchase and dispense the medications. When police reported back to Brummond, Brummond claimed Forster lied and was possibly having an affair with the man boarding the horse. The police found no evidence Forster had burglarized the Clinic, and did not interview Forster again.

[¶ 7] In April 2001, Forster sued the Clinic, alleging it breached an oral one-year employment agreement by prematurely terminating her contract.

[¶ 8] In July 2001, an agent of the Bureau of Criminal Investigation, who was investigating a break-in at the Bowman Veterinary Clinic, was informed by the Bowman County Sheriff's Department that Forster was viewed as a suspect on the basis of information Brummond had given the Bowman Veterinary Clinic. The investigator contacted Brummond, who told him Forster had no license to purchase or sell medications. After the investigator verified that Forster had the necessary license, he advised Brummond that because of the manner in which the crime occurred, Forster was not a suspect in the break-in at the Bowman Veterinary Clinic.

[¶ 9] After the conversation with the investigator, Brummond continued to in-

form her employees and friends, including the assistant State Veterinarian, that the Bureau of Criminal Investigation was investigating Forster in connection with the break-ins at her Clinic and at the Bowman Veterinary Clinic. On August 8, 2001, Brummond reported to Dickinson police that another break-in had occurred at her Clinic. The locks at the Clinic had been changed, but a key was missing from Brummond's home, and she reported several bottles of medication were missing. Brummond informed police that Forster was the only person she thought might have stolen the key and broken into the Clinic. The police did not interview Forster about the second break-in at the Clinic. Two weeks later, Brummond contacted the Stark County Sheriff's Department and reported her horse had been poisoned the day after the second break-in and she suspected Forster was responsible for the poisoning. Brummond told an employee the stolen medication can be used to treat schizophrenia or a bipolar condition, and suggested that Forster had those conditions. Forster was not questioned about the second break-in or the horse-poisoning incident.

[¶ 10] During August 2001, Forster attended the veterinary state convention and talked about potential employment with veterinarians in attendance. Some veterinarian offices eventually had contact with Brummond regarding Forster's job applications. Brummond told the veterinarians she believed Forster had broken into her Clinic, stolen drugs, and poisoned her horse. The veterinarians did not hire Forster. The State Veterinarian Office occasionally provided job referrals to prospective employers, and Forster had previously received job references through the office. At the time of trial, Forster had been unsuccessful in obtaining employment.

[¶ 11] In January 2002, Forster moved to amend her complaint to add a defamation claim and to add Brummond as a defendant on the basis of Brummond's deposition testimony. Forster claimed that Brummond had told several individuals, including law enforcement officers, other veterinarians, the assistant State Veterinarian, and her employees, friends, and family that Forster was dangerous and had broken into Brummond's Clinic, stolen and sold drugs, poisoned Brummond's horse, and abused animals. The district court granted the motion.

[¶ 12] The court ordered separate trials of the contract and tort claims under N.D.R.Civ.P. 42(b). The defamation claim was tried before a jury. In October 2003, the jury found Brummond and the Clinic had defamed Forster and awarded Forster $50,000 in past noneconomic damages, $10,000 in future noneconomic damages, and $100,000 in past economic damages. The jury also found Forster was entitled to an award of attorney fees. The district court denied Brummond and the Clinic's motions for judgment notwithstanding the verdict and for a new trial, and a judgment was entered awarding Forster $264,884.57 in damages, attorney fees, costs, and disbursements.

[¶ 13] The employment contract claim was tried to the court without a jury. The district court found that after March 2000, Forster was an at-will employee and therefore was not entitled to damages for breach of an employment contract. The court dismissed the contract claim in October 2003, and also denied Forster's motion to alter or amend the judgment.

[¶ 14] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The parties' appeals are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D.

Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

[¶ 15] Brummond and the Clinic argue the jury verdict is not supported by the evidence and the district court committed reversible error in its instructions to the jury and in several of its evidentiary rulings.

### A

[¶ 16] Brummond and the Clinic claim they are entitled to judgment as a matter of law because Forster failed to produce evidence that they "published" any defamatory statements about her.

[¶ 17] We explained the standard for reviewing a N.D.R.Civ.P. 50 motion for judgment as a matter of law in *Amyotte ex rel. Amyotte v. Rolette County Hous. Auth.*, 2003 ND 48, ¶ 15, 658 N.W.2d 324 (quoting *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450):

> The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. In considering this motion, the trial court must apply a rigorous standard with a view toward preserving a jury verdict, and so must we in our review on appeal. In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support the verdict. The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal.

(Citations omitted.) In reviewing a district court ruling on a motion for judgment as a matter of law, we examine the sufficiency of the evidence by viewing the evidence supporting the jury verdict as the truth. *Perry v. Reinke*, 1997 ND 213, ¶ 13, 570 N.W.2d 224. This Court then applies the standard for a Rule 50 judgment as a matter of law, which is whether the evidence favoring the verdict is so insufficient, reasonable minds could reach only one conclusion as to the verdict. *Id.* When, as here, a party also brings a post-trial motion for judgment as a matter of law, we treat the post-trial motion as seeking judgment notwithstanding the verdict. *See Diversified Fin. Sys. Inc. v. Binstock*, 1998 ND 61, ¶ 10, 575 N.W.2d 677. A motion for judgment notwithstanding the verdict is addressed to the sound discretion of the district court, and the court's ruling will not be overturned on appeal unless the court manifestly abused its discretion. *Id.* A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Ritter, Laber and Assoc., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 34, 680 N.W.2d 634.

[¶ 18] To be defamatory, a statement must be false. *Mr. G's Turtle Mountain Lodge, Inc. v. Roland Township*, 2002 ND 140, ¶ 33, 651 N.W.2d 625; N.D.C.C. § 14–02–04. Actionable defamation requires publication, which necessitates communication of the alleged defamatory matter to a third person. *Schultze v. Continental Ins. Co.*, 2000 ND 209, ¶ 12, 619 N.W.2d 510. " 'There can be no defa-

mation unless the recipient of the communication believes it to be defamatory, *i.e.,* the plaintiff is defamed in the recipient's eyes.' " *Little v. Spaeth*, 394 N.W.2d 700, 706 (N.D.1986) (quoting L. Eldredge, *The Law of Defamation* 44 (1978)). In a defamation action, the court determines whether a communication is capable of bearing a particular meaning and whether that meaning is defamatory, and the jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient. *Bertsch v. Duemeland*, 2002 ND 32, ¶ 14, 639 N.W.2d 455, 460 (quoting *Restatement (Second) of Torts* § 614 (1977)). At Forster's request, the district court instructed the jury in accordance with NDJI Civil C–9.40 (1997): "Publication means that the defamatory matter has been communicated by the Defendants to a third person who believes it to be defamatory. The action may be maintained even if communicated to only one person."

[¶ 19] Brummond and the Clinic do not claim the statements were incapable of bearing a defamatory meaning. *See* N.D.C.C. § 14–02–04 (defining civil slander). Rather, they argue the evidence of publication is lacking in this case because Forster failed to produce any witnesses who testified they heard the statements and believed those statements to be defamatory.

[¶ 20] A jury has the right to consider circumstantial evidence as well as direct evidence. *Leake v. Hagert*, 175 N.W.2d 675, 687 (N.D.1970); *see also* NDJI Civil C–80.50 (1998) (stating "[a] fact can be proved by either direct evidence or circumstantial evidence, or by both"). Direct testimony of the recipient's understanding of the defamatory nature of a libel is not required if other evidence is sufficient to permit an inference of that understanding. *Wheeler v. Green*, 286 Or.

99, 593 P.2d 777, 782 (1979); *see also* 53 C.J.S. *Libel and Slander* § 165(b) (1987). Brummond did not dispute that she told various individuals Forster was involved in the break-ins, the horse poisoning, and the alleged abuse of Forster's horse. Forster presented evidence that some veterinarians expressed an interest in employing her before they communicated with Brummond. After communicating with Brummond, the veterinarian offices no longer had positions available for Forster. The jury was not required to believe testimony that the veterinarians did not hire Forster for reasons other than the concerns communicated to them by Brummond. We conclude the evidence in this case was sufficient for the jury to find that the "publication" element of defamation has been satisfied.

**B**

[¶ 21] Brummond and the Clinic argue they are entitled to judgment as a matter of law because Forster failed to meet her burden of proving damages.

[¶ 22] The determination of the amount of damages is in the province of the jury and rests largely in the discretion of the jury. *Anderson v. A.P.I. Co. of Minnesota*, 1997 ND 6, ¶ 24, 559 N.W.2d 204. A district court should not disturb a jury's verdict for damages unless the amount is against the weight of the evidence or is so excessive or inadequate as to be without support in the evidence. *Rittenour v. Gibson*, 2003 ND 14, ¶ 41, 656 N.W.2d 691.

[¶ 23] In *Vanover v. Kansas City Life Ins. Co.*, 553 N.W.2d 192, 197 (N.D.1996), this Court held that proof of special damages is not required to recover in a defamation action for libel per quod, which requires reference to extrinsic evidence to establish a defamatory meaning,

because a person's reputation is a major factor in a satisfactory existence and the function of a libel action is to provide public vindication of a decent citizen's good name. Brummond and the Clinic do not challenge the district court's damage instruction to the jury, which was based on *Vanover*:

> One who is liable for a defamatory communication is liable for the proved, economic harm caused to the reputation of the person defamed.

> It is not necessary to prove noneconomic harm caused to the reputation of the person defamed. The law presumes the harm occurred under the facts of this case.

Therefore, Forster was not required to prove noneconomic damages, although she did testify about the stress she suffered from not being able to find a job as a veterinarian.

[¶ 24] With respect to economic damages, Forster testified about her unsuccessful employment applications and her other attempts to obtain employment with veterinarians. Any initial interest the veterinarians had in employing Forster vanished after they communicated with Brummond. Although Forster had earlier received employment through information from the State Veterinarian, that office provided no assistance to Forster after her termination from the Clinic and Brummond's contacts with the office. Forster was unable to find employment from the time of her termination until the date of trial. We conclude there is sufficient evidence in the record to support the jury's award of $50,000 in past noneconomic damages, $10,000 in future noneconomic damages, and $100,000 in past economic damages. The district court did not err in denying Brummond and the Clinic's motion for judgment notwithstanding the verdict based on insufficient evidence of damages.

C

[¶ 25] Brummond and the Clinic argue they are entitled to a new trial because the jury's verdict is not supported by the evidence.

[¶ 26] In a motion for new trial, the district court may, within limits, weigh the evidence and judge the credibility of witnesses. *Perry v. Reinke*, 1997 ND 213, ¶ 21, 570 N.W.2d 224. A verdict is against the weight of the evidence when it is not supported by substantial evidence. *Id.* at ¶ 22. When reviewing a motion for new trial, we do not apply the same standard as the district court and will not reweigh the evidence on appeal, but will review only whether the district court abused its discretion. *Rittenour*, 2003 ND 14, ¶ 13, 656 N.W.2d 691.

[¶ 27] The district court ruled there was sufficient evidence to establish that defamatory statements were made, that persons believed the statements to be defamatory, and that Forster suffered damages. Upon our review of the record, we conclude the district court did not abuse its discretion in refusing to grant a new trial based on insufficient evidence to sustain the verdict.

D

[¶ 28] Brummond and the Clinic argue they are entitled to a new trial because the district court erroneously instructed the jury on the qualified privilege defense.

[¶ 29] Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *Nesvig v. Nesvig*, 2004 ND 37, ¶ 12, 676 N.W.2d 73. We review jury instructions as a whole, and they will be allowed if they fairly advise

the jury of the law on the essential issues in the case. *Rittenour,* 2003 ND 14, ¶ 15, 656 N.W.2d 691. The district court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of the applicable law. *Langness v. Fencil Urethane Sys., Inc.,* 2003 ND 132, ¶ 31, 667 N.W.2d 596.

▇▇▇▇▇ [¶ 30] An individual is not liable for defamatory statements if the statements are privileged. *Wagner v. Miskin,* 2003 ND 69, ¶ 11, 660 N.W.2d 593. "Privilege is based upon the sound public policy that some communications are so socially important that the full and unrestricted exchange of information requires some latitude for mistake." *Riemers v. Grand Forks Herald,* 2004 ND 192, ¶ 5 (citation omitted). Under N.D.C.C. § 14–02–05, a privileged communication is defined as one made:

1. In the proper discharge of an official duty;

2. In any legislative or judicial proceeding or in any other proceeding authorized by law;

3. In a communication, without malice, to a person interested therein by one who also is interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information; and

4. By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof.

In the cases provided for in subsections 3 and 4, malice is not inferred from the communication or publication.

A communication made under the circumstances set forth in N.D.C.C. § 14–02–05(1) and (2) is absolutely privileged. *Wagner,* at ¶ 11. A communication made under the circumstances set forth in N.D.C.C. § 14–02–05(3) and (4) is not absolutely privileged, but is qualifiedly privileged, and the privilege may be abused. *Richmond v. Nodland,* 552 N.W.2d 586, 588 (N.D.1996). A "qualified privileged communication is usually a good-faith communication wherein the author of the communication has an interest or duty which is public, personal, or private; either legal, judicial, political, moral, or social; and is made to a person having a corresponding duty or interest." *Emo v. Milbank Mut. Ins. Co.,* 183 N.W.2d 508, 514 (N.D.1971). A "qualified privilege is abused if statements are made with actual malice, without reasonable grounds for believing them to be true, and on a subject matter irrelevant to the common interest or duty." *Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 79 (N.D.1991).

▇▇▇▇▇ [¶ 31] In considering whether an alleged defamatory statement is subject to a qualified privilege, we undertake a two-step analysis: first, we determine whether the attending circumstances of the communication occasion a qualified privilege, and, if so, we determine whether the privilege was abused. *Fish v. Dockter,* 2003 ND 185, ¶ 12, 671 N.W.2d 819. When the circumstances of the occasion for the communication are not in dispute, the determination whether there is a qualified privilege is a question of law for the court, but the determination whether a qualified privilege has been abused is generally a question of fact. *Soentgen,* 467 N.W.2d at 78. We have held that defamatory statements voluntarily made to law enforcement personnel during the investigation of criminal activity are qualifiedly privileged, *see Richmond,* 552 N.W.2d at 589, and that defamatory communications by an

employer concerning the conduct of an employee are, when necessary to protect the interests of the employer, qualifiedly privileged. *See Jose v. Norwest Bank North Dakota, N.A.,* 1999 ND 175, ¶ 25, 599 N.W.2d 293; *Soentgen,* 467 N.W.2d at 79. In accordance with this precedent, the district court instructed the jury that a qualified privilege existed with respect to statements Brummond made to law enforcement officers and Clinic employees, and the special verdict form required the jury to decide whether Brummond and the Clinic abused the qualified privilege in these instances. The jury found that Brummond and the Clinic did not abuse their qualified privilege.

[¶ 32] Brummond and the Clinic argued to the district court and to this Court on appeal that the jury should have been permitted to determine whether every defamatory statement attributed to them was subject to a qualified privilege. They argue the defamatory statements made to others were qualifiedly privileged "because they involved plaintiff's competency as a practicing veterinary physician and were made to those with an interest in plaintiff's professional skills." We reject this argument.

[¶ 33] First, because the circumstances of the various communications were undisputed, whether a qualified privilege existed with respect to these statements was a question for the court to determine as a matter of law, not a question for the jury to determine. *See Soentgen,* 467 N.W.2d at 78. As the district court explained in denying Brummond and the Clinic's motion for new trial:

> Brummond's argument regarding qualified privilege was addressed at trial and certain statements were given qualified privilege. Brummond now argues all statements should be given this privilege without evidence at trial or argument

now as to why these certain other statements qualify as privileged.

[¶ 34] Second, Brummond and the Clinic did not argue that a qualified privilege was applicable to job references under N.D.C.C. § 34–02–18, which provides immunity to an employer "who discloses information about a current or former employee's job performance to a prospective employer of the employee. . . ." Even if a qualified privilege existed with respect to job references, the record shows that Brummond was not requested by the veterinarians to provide job references for Forster. Indeed, Brummond contacted a veterinarian's wife and told her about Forster. Brummond admitted talking to her friend, the assistant State Veterinarian, on more than ten occasions about Forster, but expected the assistant to "do nothing with the information" because the assistant had no disciplinary or licensing authority.

[¶ 35] We conclude Brummond and the Clinic's argument that the jury should have been allowed to decide whether all communications to friends, family members, other veterinarians, and the assistant State Veterinarian's office were subject to a qualified privilege is without merit. The district court did not err in concluding there was no basis for instructing the jury that a qualified privilege existed beyond the statements Brummond made to law enforcement officers and Clinic employees.

E

[¶ 36] Brummond and the Clinic argue the district court failed to properly instruct the jury on Forster's duty to mitigate damages.

[¶ 37] The court instructed the jury based on part of *Restatement (Second) of Torts* § 918 (1977), which addresses diminution of damages:

§ 918. Avoidable Consequences

(1) Except as stated in Subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.

(2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.

The court gave an instruction based on subsection 2 of the Restatement provision. Brummond and the Clinic do not argue the Restatement provision is inconsistent with North Dakota law. Rather, they argue the failure to include an instruction based on subsection 1, in addition to the instruction based on subsection 2, is reversible error.

[¶ 38] Defamation is an intentional tort. *See Gratech Co., Ltd. v. Wold Eng'g, P.C.*, 2003 ND 200, ¶ 30, 672 N.W.2d 672. Courts have held that plaintiffs in a defamation action have a duty to mitigate damages. *See, e.g., Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 837 A.2d 759, 767 (2004); *see also* 22 Am. Jur.2d *Damages* § 349, at p. 319 (2003) (noting the "rule of avoidable consequences generally is held to apply in actions involving intentional torts") (footnote omitted). However, Section 918(2) of the Restatement "takes a restrictive view of the victim's obligation to mitigate damages" in cases involving intentional torts. 22 Am.Jur.2d *Damages* § 349, at p. 320. Subsection 1 and subsection 2 of the Restatement provision are mutually exclusive, and Subsection 2 sets forth a lesser duty on the part of an injured person to mitigate damages "if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it...." In this defamation action, Forster was alleging either that Brummond and the Clinic intended the harm or they were aware of the harm and recklessly disregarded it. Subsection 2 of the Restatement provision was the applicable provision under the circumstances of this case. We conclude the district court's refusal to include subsection 1 in its instruction on mitigation of damages was not error.

F

[¶ 39] Brummond and the Clinic argue they are entitled to a new trial because the district court erred in excluding evidence of Forster's reputation and character.

[¶ 40] A district court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused. *Flattum–Riemers v. Peters–Riemers*, 2001 ND 121, ¶ 15, 630 N.W.2d 71. Under N.D.R.Civ.P. 61, "[n]o error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." *See also* N.D.R.Ev. 103(a) (providing "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected").

[¶ 41] Brummond and the Clinic claim the district court wrongfully precluded them from introducing any evidence of Forster's reputation and character to mitigate damages or to demonstrate that the defamatory comments were communicated in good faith. Brummond and the Clinic sought to introduce the "Probation Agreement" and evidence surrounding its back-

ground to establish Forster did not get along with Clinic employees or clients. The court ruled the testimony was irrelevant, and in the alternative, concluded that any relevance was outweighed by its prejudicial effect under N.D.R.Ev. 403. Brummond and the Clinic also sought to introduce evidence that Forster had a poor reputation as a veterinarian. The court refused to allow evidence on this issue, reasoning it was irrelevant and unduly prejudicial, but said it would allow testimony if it addressed the specifics of the defamation, such as Forster's "dangerous[ness]."

[¶ 42] Because the "gravamen of the tort of defamation is the injury to the plaintiff's reputation," *Shirley v. Freunscht*, 303 Or. 234, 735 P.2d 600, 602 (1987), evidence of a plaintiff's general bad reputation or bad character is admissible in a defamation action. *See, e.g., Nichols v. Philadelphia Tribune Co.*, 22 F.R.D. 89, 91 (E.D.Pa.1958); *Raymond U v. Duke Univ.*, 91 N.C.App. 171, 371 S.E.2d 701, 709–10 (1988); L. Eldredge, *The Law of Defamation* § 97, at p. 564 (1978) (*"Eldredge"*); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 116A, at p. 847 (5th ed.1984). However, specific instances of a plaintiff's conduct or a plaintiff's particular character traits are not relevant unless they were generally known by others in the community. *See, e.g., Gosden v. Louis*, 116 Ohio App.3d 195, 687 N.E.2d 481, 494–95 (1996); *Shirley*, 735 P.2d at 603. Moreover, reputation evidence is permissible only if it affects the aspects of reputation that were defamed. *Gosden*, 687 N.E.2d at 495; *Eldredge* § 97, at p. 566.

[¶ 43] Although the district court's exclusion of reputation evidence appears to have been rather broad, we are unable to determine whether Brummond and the Clinic were prejudiced by the court's ruling, because they did not make an offer of proof of the specific testimony that they sought to introduce and which the district court excluded. Without a sufficient offer of proof, we are unable to review whether exclusion of this evidence was prejudicial. *See Blessum v. Shelver*, 1997 ND 152, ¶ 22, 567 N.W.2d 844; *Wagner v. Peterson*, 430 N.W.2d 331, 333 (N.D. 1988). Under these circumstances, we are unable to say the district court abused its discretion in excluding this evidence.

G

[¶ 44] Brummond and the Clinic argue the district court improperly excluded a toxicological laboratory report indicating that Brummond's horse was poisoned.

[¶ 45] Under N.D.R.Ev. 803(6), records of a regularly conducted business activity are not excluded by the hearsay rule, even though the declarant is available as a witness:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstance of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph, includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

[¶ 46] Brummond and the Clinic offered a toxicological report of samples

from Brummond's horse submitted to a doctor in Colorado. The report included medical records, a chain-of-custody statement, and a certificate of analysis prepared by the doctor indicating Brummond's horse had been poisoned. The exhibit was accompanied by an affidavit of the doctor attesting that it constituted a true and correct copy of her entire file and report on the matter and that it had been prepared in accordance with the business records exception to the hearsay rule. Forster objected, arguing an affidavit was insufficient to establish foundation and the custodian of the records was required to appear at trial or by deposition. Forster also argued the report contained expert testimony that had not been previously disclosed. The district court refused to allow the exhibit in evidence.

[¶ 47] Contrary to Forster's argument, some courts have allowed the foundation for admission of business records to be established by the custodian's affidavit under rules virtually identical to N.D.R.Ev. 803(6). *See, e.g., Wilson v. Zapata Off–Shore Co.,* 939 F.2d 260, 272 (5th Cir.1991); *In re Estate of Davis,* 775 A.2d 1127, 1130–31 (Me.2001); *Chamberlain v. Thames,* 131 N.C.App. 705, 509 S.E.2d 443, 450 (1998). Other jurisdictions have amended their rules to specifically allow the foundation to be established by affidavit. *See, e.g., Lasater v. Lasater,* 809 N.E.2d 380, 395 (Ind.App.2004); *Venable v. State,* 113 S.W.3d 797, 800 (Tex.App. 2003). It is unnecessary to decide in this case whether an affidavit of a custodian can establish the foundation for admission of business records under N.D.R.Ev. 803(6), because even if the court erred in excluding the exhibit, the error did not affect Brummond and the Clinic's substantial rights. Brummond was allowed to testify that she had a laboratory conduct toxicology testing and the results showed that

her horse had been poisoned. While cumulative evidence may sometimes strengthen the weight and credibility of a witness's testimony, a district court does not necessarily abuse its discretion by excluding cumulative evidence. *Flattum–Riemers,* 2001 ND 121, ¶ 15, 630 N.W.2d 71. We conclude the exclusion of the laboratory report does not warrant a new trial.

### H

[¶ 48] Brummond and the Clinic argue the district court erred in admitting the testimony and curriculum vitae of Forster's expert witness.

[¶ 49] In *Gonzalez v. Tounjian,* 2003 ND 121, ¶ 24, 665 N.W.2d 705 (citations omitted), we set forth the standards for introduction of expert testimony:

> Introduction of expert testimony is governed by N.D.R.Ev. 702:
>
> > If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> Under Rule 702, expert testimony is admissible whenever specialized knowledge will assist the trier of fact. Rule 702 envisions generous allowance of the use of expert testimony if the witness is shown to have some degree of expertise in the field in which she is to testify. Whether a witness is qualified as an expert and whether the witness's testimony will assist the trier of fact are decisions within the sound discretion of the trial court which will not be overturned on appeal absent an abuse of discretion.

[¶ 50] Forster offered economic calculations of her past and future economic loss through the testimony of a certified

public accountant, who had been providing financial analysis and calculations for 30 years. Brummond and the Clinic argued that the certified public accountant had no education, training, or experience as a vocational expert or in the veterinary business and was therefore not qualified to render an expert opinion on Forster's past and future earning potential. The district court allowed the testimony, ruling Brummond and the Clinic's objection went to the weight of the testimony rather than to its admissibility.

[¶ 51] The district court did not abuse its discretion in allowing the certified public accountant to testify in this case or in admitting his curriculum vitae in evidence. The certified public accountant had some degree of expertise and experience in the area of financial analysis that the district court deemed helpful to the jury. Brummond and the Clinic's attorney cross-examined him and made the jury aware of his lack of education, training, and experience in the veterinary business, and the jury awarded Forster substantially less in economic damages than the expert's calculations established. We conclude Brummond and the Clinic are not entitled to a new trial on the basis of admission of this evidence.

I

[¶ 52] Brummond and the Clinic argue they are entitled to a new trial because the jury's award of attorney fees is irreconcilably inconsistent with its findings that they did not abuse their qualified privilege and that Forster was not entitled to an award of exemplary damages.

[¶ 53] Reconciliation of a verdict requires that we examine both the law of the case and the evidence in order to determine whether the verdict is logical and probable and therefore consistent or whether it is perverse and clearly contrary to the evidence. *Barta v. Hinds*, 1998 ND 104, ¶ 6, 578 N.W.2d 553. Having examined the law of the case and the evidence, we see no irreconcilable inconsistency in this jury verdict.

[¶ 54] Brummond and the Clinic did not object to the district court's instruction on attorney fees:

A Defendant who publishes a false statement harmful to the business interests of another is subject to liability for pecuniary loss resulting to the other, including attorney's fees and other expenses required by the party to counteract the publication, if:

(a) the Defendant intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and

(b) the Defendant knows that the statement is false or acts in reckless disregard of its truth or falsity.

Therefore, the jury could award attorney fees if it found that Brummond and the Clinic knew that a statement was "false or act[ed] in reckless disregard of its truth or falsity." The jury was instructed that a qualified privilege was abused if Brummond and the Clinic "made statements with ill will or wrongful motive or without reasonable grounds for believing them to be true." Under N.D.C.C. § 32–03.2–11, an award of exemplary damages is authorized "when the defendant has been guilty by clear and convincing evidence of oppression, fraud, or actual malice," and the jury was so instructed. The state of mind required for the jury to find no abuse of the qualified privilege and no entitlement to exemplary damages differs from the state of mind required for the jury to award attorney fees. Therefore, there is no irreconcilable inconsistency in the jury verdict, and the district court did not

abuse its discretion in failing to grant a new trial on this basis.

[¶ 55] We conclude there is sufficient evidence to support the jury's verdict, and the district court did not commit reversible error in its instructions to the jury or in its evidentiary rulings during the jury trial.

### III

[¶ 56] Forster argues the district court erred as a matter of law in ruling after the bench trial in the employment contract action that the parties' written contract was not extended for an additional year and that she was an at-will employee.

[¶ 57] Under N.D.C.C. § 34–03–01, employment without a definite term is presumed to be at will, and an at-will employee may be terminated with or without cause. *Anderson v. Meyer Broadcasting Co.*, 2001 ND 125, ¶ 28, 630 N.W.2d 46; *Dahlberg v. Lutheran Soc. Serv.*, 2001 ND 73, ¶ 13, 625 N.W.2d 241; *Jose*, 1999 ND 175, ¶ 10, 599 N.W.2d 293. However, an oral promise can create a contract of employment for a definite term. *See Aaland v. Lake Region Grain Coop.*, 511 N.W.2d 244, 245–46 (N.D.1994). The existence of an oral contract and the extent of its terms are questions of fact which will not be reversed on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *See Comstock Constr., Inc. v. Sheyenne Disposal, Inc.*, 2002 ND 141, ¶ 13, 651 N.W.2d 656; *GeoStar Corp. v. Parkway Petroleum, Inc.*, 495 N.W.2d 61, 66 (N.D.1993). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is some evidence to support it, or if, although there is some evidence to support it, on the entire evidence, this Court is left with a definite and firm conviction a mistake has been made. *Tibert v. City of Minto*, 2004 ND 97, ¶ 17, 679 N.W.2d 440.

[¶ 58] In this case, the parties' written two-year employment contract provided:

Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in writing and signed by each party or an authorized representative of each party.

Although there were discussions about preparing another contract after the previous written agreement expired, the parties did not enter into an additional written employment agreement. Forster testified the parties verbally agreed to "renew" the written "contract for [an] additional year." Brummond testified the written contract was not extended for an additional year and she considered Forster "an at-will employee.... Both she and I are free to continue or not continue the relationship as we each see fit."

[¶ 59] In a three-page opinion reciting the conflicting evidence and dismissing the breach of employment contract action, the district court concluded:

The parties continued to work together and the pay remained the same as set out in the contract. Forster stated she was under the impression the contract continued, and Brummond stated she understood the contract no longer applied and the relationship was one of at-will employment. The Court finds because no writing was created extending the contract as required by the contract, the April 1998 contract was not extended beyond March 2000.

Forster argues the district court's decision is erroneous as a matter of law because there is no legal requirement that an employment agreement be in writing. However, we refuse to hold that the district court's decision was induced by an erroneous view of the law solely on the basis of

the last sentence of the court's three-page decision.

 [¶ 60] We will rely on implied findings of fact when the record enables us to understand the factual determination made by the district court and the basis for its conclusions of law and judgment. *See, e.g., Almont Lumber & Equip., Co. v. Dirk,* 1998 ND 187, ¶ 13, 585 N.W.2d 798; *First Am. Bank West v. Berdahl,* 556 N.W.2d 63, 65 (N.D.1996). It is a very well-established principle of contract law that oral agreements made subsequent to a written agreement containing an integration or modification clause are not rendered ineffective by the prior writing. *See* 11 R. Lord, *Williston on Contracts* § 33:23 (4th ed.1999); 6 A. Corbin, *Corbin on Contracts* § 594 (1979). Thus, the prior written agreement providing it could be modified only in writing did not prevent the parties from entering into a new oral agreement. If the court had been under the impression a writing was required to create an employment relationship beyond March 2000, there would have been no need for the court to recite evidence of the parties' respective understandings of their employment relationship after March 2000. We interpret the court's reference to the lack of a writing as further evidence that the parties never reached an oral agreement on employment for a definite term. Given the conflicting evidence on the issue, we conclude the district court's implied finding that there was no oral agreement about employment for a definite term is not clearly erroneous. Consequently, Forster was an at-will employee, and the district court did not err in dismissing her breach of employment contract claim against the Clinic.

IV

[¶ 61] In view of our disposition of this case, it is unnecessary to address other issues raised. The judgments and post-trial orders are affirmed.

[¶ 62] GERALD W. VANDE WALLE, C.J., DAVID W. NELSON, D.J., WILLIAM A. NEUMANN, and CAROL RONNING KAPSNER, JJ, concur.

[¶ 63] The Honorable DAVID W. NELSON, D.J., sitting in place of MARING, J., disqualified.